**Mangoe Deleon EDDIE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–02–00050–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted Oct. 30, 2002.

Decided Jan. 9, 2003.

Discretionary Review Refused
June 11, 2003.

R.D. Rucker, Dallas, for appellant.

Snow E. Bush Jr., Special Prosecutor, Longview, for appellee.

Before MORRISS, C.J., ROSS and GRANT *, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

Mangoe Deleon Eddie appeals from the 2002 revocation of his community supervision. In 1997, he had been found guilty of

* Ben Z. Grant, Justice, Retired, Sitting by As- signment

retaliation and placed on ten years' community supervision. A hearing on the State's motion to revoke was conducted concurrently with his trial on a separate charge of retaliation. He pled true to three counts of the motion to revoke and then proceeded to trial and was found guilty of the retaliation charge.[1] The trial court revoked his community supervision and sentenced Eddie to ten years' imprisonment.

Eddie makes the following five contentions on appeal:

1. he was not given a copy of the conditions of his community supervision or of the amended application to revoke community supervision,

2. the trial court did not consider the full range of punishment,

3. he received ineffective assistance of counsel,

4. the court erred in finding him competent, and

5. the court erred in failing to order a presentence investigation.

## Copies of Community Supervision Conditions and of Amended Motion to Revoke

We first address Eddie's contentions that reversible error is shown by the absence from the record of proof he received a copy of the conditions of his community supervision or a copy of the amended motion to revoke community supervision. Eddie's contention is based on his due process right to have notice of the conditions of his community supervision and the conditions he allegedly violated. *See Caddell v. State*, 605 S.W.2d 275, 277 (Tex.Crim.App.1980); *Moore v. State*, 11 S.W.3d 495, 499 (Tex.App.-Houston [14th Dist.] 2000, no pet.). Due process requires that specificity and adequate notice of the conditions of community supervision be provided to a defendant. *McArthur v. State*, 1 S.W.3d 323, 335 (Tex.App.-Fort Worth 1999, pet. ref'd); *Simpson v. State*, 772 S.W.2d 276, 278 (Tex.App.-Amarillo 1989, no pet.).

Texas Rule of Appellate Procedure 33.1(a) provides that, to present a complaint for appellate review, the record must show (1) the complaint was presented by timely request, objection, or motion and was sufficiently specific to make the trial court aware of the complaint, and (2) the trial court either ruled or refused to rule and the appellant objected to the refusal. TEX.R.APP. P. 33.1(a). An objection is required to inform the trial court of the basis of the objection and afford him or her the opportunity to rule. *Purtell v. State*, 761 S.W.2d 360, 365 (Tex.Crim.App.1988). Even constitutional error may be waived. *Wright v. State*, 28 S.W.3d 526, 536 (Tex. Crim.App.2000), *cert. denied*, 531 U.S. 1128, 121 S.Ct. 885, 148 L.Ed.2d 793 (2001).

Eddie has not shown he alerted the trial court by complaining at any point in the proceedings that he was not aware of the terms of his community supervision. The claim of error has not been preserved for review. Further, his response when the allegations of the application to revoke were read to him shows affirmatively that he was aware of the details of at least one of the terms of his community supervision. The contention of error is without merit.

Eddie also contends error is shown because the record does not affirmatively reflect he was provided with a copy of the State's amended motion to revoke, thus depriving him of due process because of the lack of notice of the allegations against him. This complaint was also not present-

---

1. That conviction is also on appeal before this Court in cause number 06–02–00051–CR.

ed to the trial court, and for the same reasons stated above, we may not reach it on appeal. *See* Tex.R.App. P. 33.1.

### Considering the Full Range of Punishment

■ Eddie next contends he was denied his right to an impartial forum because the trial court failed to consider the full range of punishment for this offense. A trial court's arbitrary refusal to consider the entire range of punishment available for the violation of a criminal law would constitute a denial of due process. *McClenan v. State*, 661 S.W.2d 108, 110 (Tex.Crim. App.1983); *East v. State*, 71 S.W.3d 774, 776 (Tex.App.-Texarkana 2002, no pet.); *Jefferson v. State*, 803 S.W.2d 470, 471 (Tex.App.-Dallas 1991, pet. ref'd).

Eddie focuses his argument on a statement made by the trial court. This statement was made after Eddie pled true to three of the allegations. Before finding that Eddie entered his plea voluntarily, the trial court summarized his options in disposing of the proceeding.

> [T]he law gives me a number of options. The first option is do nothing, leave it the way it was prior to the time they arrested you on the revocation warrant. The next option that I have is to extend the period of supervision, that is the length of probation for up to an additional one year period, or fine you up to a thousand dollars. The final option that I have is to revoke your probation and send you to the state penitentiary for not less than two years nor more than ten years. Do you understand those are the options that I have?

■ Eddie argues this statement reflects the trial court's misunderstanding of the actual options available and thus necessarily shows the court did not properly consider the full range of punishment options available. Counsel did not object to this statement. Accordingly, any claim of error has not been preserved for appellate review. *See* Tex.R.App. P. 33.1.[2]

■ Even if the contention were preserved, however, the argument raised in its support is not a correct statement of the current law. Eddie, relying on *Ex parte Feldman*, 593 S.W.2d 720, 721 (Tex. Crim.App.1980), argues the trial court did not consider all of the possibilities because he did not consider the possibility of keeping the violations already proven before it, continuing the proceeding, and postponing his final action on the revocation.

This statement of the law approving that procedure was disavowed by the Texas Court of Criminal Appeals in *Rogers v. State*, 640 S.W.2d 248, 255, 263 (Tex.Crim. App.1981) (1st and 2nd op. on reh'g). That court held that for due process analysis there was no distinction between continuing the community supervision and continuing the hearing, and overruled cases (including *Feldman*) which approved the procedure of allowing an extended continuance after the hearing and then later revoking the community supervision. The court found that this procedure was no more than a charade that was equivalent to continuing the community supervision and that due process in both instances required another determination that the person on community supervision had breached the terms of that supervision

---

2. This Court has recently reaffirmed the holding that, within the context of revocation hearings, where the issue is the preservation of due process complaints, a due process objection must have been raised before the trial court to preserve it for appellate review, even where the defendant has a manifestly meritorious claim. *In re J.L.D.*, 74 S.W.3d 166, 169 (Tex.App.-Texarkana 2002, no pet.); *see Rogers v. State*, 640 S.W.2d 248, 265 (Tex.Crim. App.1982) (opinion on state's second motion for rehearing).

with full application of due process safeguards.

Accordingly, the suggestion that an additional option existed in which the trial court could have postponed its decision is inaccurate. For all intents and purposes, that option is nothing more than the option of continuing the person on community supervision. The trial court's statement clearly included that option. We overrule this contention of error.

### Ineffective Assistance of Counsel

Eddie next contends he received ineffective assistance of counsel at the revocation stage of his trial because counsel did not conduct an investigation into the facts or law or go over the motion to revoke with him. The standard of testing claims of ineffective assistance of counsel was set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted for Texas constitutional claims in *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex.Crim.App.1986). To prevail on this claim, an appellant must prove by a preponderance of the evidence (1) that his or her counsel's representation fell below an objective standard of reasonableness and (2) that the deficient performance prejudiced his or her defense. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052; *Rosales v. State*, 4 S.W.3d 228, 231 (Tex.Crim.App. 1999). To meet this burden, an appellant must prove that his or her attorney's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for the attorney's deficiency, the result of the trial

would have been different. *Tong v. State*, 25 S.W.3d 707, 712 (Tex.Crim.App.2000). Under this standard, a claimant must prove that counsel's representation so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland*, 466 U.S. at 686, 104 S.Ct. 2052.

▬ In a guilty plea, counsel need not undertake the same magnitude of independent factual investigation when the defendant knowingly and voluntarily pleads guilty to the alleged offense as would be required in a contested proceeding. *Toupal v. State*, 926 S.W.2d 606, 608 (Tex. App.-Texarkana 1996, no pet.). Similarly, where a defendant pleads "true" to allegations, we hold that failure to conduct a full-fledged independent investigation of the facts does not necessarily result in counsel rendering constitutionally ineffective assistance.

▬ In this case, Eddie contends his counsel was ineffective because she was late for hearings and was held in contempt by the trial court, and also because she arrived late on the date of the revocation proceeding. From this state of affairs, appellate counsel argues that trial counsel obviously had no opportunity to discuss with Eddie either the revocation proceeding or the allegations made against him. That conclusion is not a natural result of the argument. The record does not show that trial counsel had failed to adequately review the revocation proceedings or inform her client, but only that she was late for hearings.[3]

---

**3.** The Texas Court of Criminal Appeals has recognized that a reviewing court will only rarely be provided with a record capable of providing a fair evaluation of the merits of a claim of ineffective assistance of counsel. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim.App.1999); *Jackson v. State*, 973 S.W.2d 954, 957 (Tex.Crim.App.1998). To defeat the

presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *McFarland v. State*, 928 S.W.2d 482, 500 (Tex.Crim.App.1996). In such a case, where the alleged derelictions primarily are errors of omission outside the

Eddie also argues trial counsel was ineffective because she had difficulty following a proper procedure for offering exhibits into evidence. The exhibits were, nevertheless, admitted. Even if her efforts were inartful, there is no harm, because the exhibits were admitted into evidence.

■ In connection with that argument, Eddie also says those exhibits should never have been offered because they were nothing more than extraneous and detrimental matters. The three exhibits are all letters to defense counsel, written by Eddie. In two of the letters, Eddie graphically described sexual activities in which he wished to engage with counsel. The third letter is a story in which Eddie portrayed himself as a Venus fly-trap and the complainant as a scorpion, and described a self-destructive relationship between the characters.

This argument ignores the fact that counsel was attempting to defend Eddie by using the exhibits to help establish that Eddie was incompetent or suffered from diminished capacity and to reinforce the mitigating idea that Eddie's offenses had been committed by words only, not by any physically aggressive acts. We cannot say that introducing these exhibits served no purpose, and we will not second-guess counsel where there is a plausible basis in strategy or tactics for counsel's actions. *See Ex parte Burns,* 601 S.W.2d 370, 372 (Tex.Crim.App.1980); *Jensen v. State,* 66 S.W.3d 528, 543 (Tex.App.-Houston [14th Dist.] 2002, no pet.).

■ Eddie also contends counsel was ineffective because she offered testimony by witnesses at the revocation rather than the punishment stage who testified that Eddie needed psychiatric assistance, that

he had not physically assaulted anyone, and that he had a peaceful history as a high school student. At that point in the proceeding, however, the court was still considering whether to continue or revoke community supervision, and such matters clearly would be relevant to that decision. Counsel was not ineffective for questioning Eddie's witnesses about these matters. We overrule this contention of error.

## Competency

Eddie next contends the trial court erred by continuing with the revocation proceeding without holding a hearing after the evidence raised his legal competency to stand trial as an issue. In support of this contention, counsel directs this Court to testimony by Jack Gilbert, a licensed professional counselor, opining that Eddie needed to be under a physician's care because he was mentally ill and had serious mental problems. Eddie argues the report by Dr. John Hall that he was competent at the time Hall examined him (in December 2001) was insufficient to defeat the testimony referenced above because the hearing in question occurred two months after Hall examined Eddie.

A person is presumed to be competent to stand trial unless proven incompetent. Tex.Code Crim. Proc. Ann. art. 46.02, § 1A(b) (Vernon Supp.2003). A person is incompetent to stand trial if that person lacks "sufficient present ability to consult with [that] person's lawyer with a reasonable degree of rational understanding; or ... [if that person lacks] a rational as well as factual understanding of the proceedings against [that] person." Tex.Code Crim. Proc. Ann. art. 46.02, § 1A(1), (2) (Vernon Supp.2003). If evidence of the defendant's incompetence is brought to the

record rather than commission revealed in the trial record, collateral attack may be the vehicle by which a thorough and detailed

examination of alleged ineffectiveness may be developed and spread upon a record. *Jackson,* 973 S.W.2d at 957.

court's attention from any source, the court must conduct a hearing (or inquiry) out of the presence of the jury to determine whether there is evidence to support a finding of incompetency to stand trial. TEX.CODE CRIM. PROC. ANN. art. 46.02, § 2(b) (Vernon 1979).

■ A Section 2 hearing is required only if the evidence brought to the trial court's attention is such as to raise a bona fide doubt in the court's mind as to the defendant's competency to stand trial. *Alcott v. State,* 51 S.W.3d 596, 601 (Tex.Crim. App.2001); *Collier v. State,* 959 S.W.2d 621, 625 (Tex.Crim.App.1997). In general, a bona fide doubt is raised, so as to require a Section 2 hearing, only if the evidence indicates recent severe mental illness, at least moderate mental retardation, or truly bizarre acts by the defendant. *Collier,* 959 S.W.2d at 625; *Mata v. State,* 632 S.W.2d 355, 359 (Tex.Crim.App.1982).

■ A careful review of the record, focusing on Eddie's testimony and responses in various court appearances, reveals a lucid and rational, though troubled, person able to carry on a dialogue. That was true in June 1996 when the original retaliation charge was heard and Eddie received deferred adjudication. It was true in March 1997 when he was adjudicated on the initial retaliation charge and received community supervision. It was also true during the February 7, 2002, hearing in which the State sought to revoke Eddie's community supervision. During that hearing, Eddie may have exhibited a questionable mental state when, after consulting with his attorney, he advised the trial court that "someone is trying to kill me." Even assuming, however, Eddie's belief was false and therefore arguably paranoid, such paranoia would not be evidence of any inability to confer with his attorney in connection with his defense or of any lack of rational or factual understanding of the charges against him.

■ Later in the hearing, Mr. Gilbert, a licensed professional counselor, testified Eddie suffered from "generalized anxiety disorder," had "extreme paranoid features," and was "highly suspicious." While that is troubling, it is, again, no indicator Eddie was incompetent to stand trial. The trial court did inquire of Gilbert about, and established that Gilbert was not saying anything tending to establish, present incapacity to stand trial. In the court's questioning of Gilbert, factors were elicited to the contrary, tending to demonstrate Eddie's present competency to stand trial, including that Eddie then knew right from wrong, had intact memory functions, and was oriented to time, place, and person. At no time did Gilbert testify to anything which tended to suggest (1) Eddie could not effectively consult with his attorney, (2) Eddie lacked rational or factual understanding of the charges against him, or (3) in general that Eddie was not competent to stand trial. Though not controlling, it is worth noting that Gilbert's testimony appeared to be offered to show diminished capacity in general and thereby to mitigate the offense or the sentence, not to demonstrate lack of present competency to stand trial.

Before the hearing, defense counsel had previously raised concerns about Eddie's capacity. In response, the trial court ordered that Eddie be examined by Hall, who found in December 2001, that he was competent. When Eddie's psychologist witness, Gilbert, testified during the nonjury hearing in February 2002, the court inquired and thereby apparently confirmed for itself that Eddie was presently competent to stand trial.

We believe the trial court did what was required under the circumstances: conduct an inquiry and satisfy itself whether there

was any evidence of Eddie's incompetency. Tex.Code Crim. Proc. Ann. art. 46.02, § 2(b). As there was no jury empaneled, there was no need to conduct the inquiry in a separate hearing.

Error has not been shown. We overrule this contention of error.

**Presentence Investigation**

Eddie next contends the trial court committed reversible error by failing to order a presentence investigation pursuant to Tex.Code Crim. Proc. Ann. art. 42.12, § 9(g) (Vernon Supp.2003).

In *Whitelaw v. State,* 29 S.W.3d 129 (Tex.Crim.App.2000), the Texas Court of Criminal Appeals unanimously held the trial court must order preparation of a PSI report in a felony case unless the exceptions of Section 9(g) apply. Even if the exceptions do apply, *Whitelaw* held the trial court must order one prepared when requested by the defendant. In so holding, the court disapproved of cases holding the trial court has discretion in such cases to order preparation of a PSI report. *Id.* at 132, 134.

From a strict reading of the statute, we question whether a PSI report is available at the point of revocation. Article 42.12, § 9(a) specifies that one must be prepared "before the imposition of sentence." Technically, the sentence has previously been pronounced and imposed after the finding of guilt, but the imposition is then suspended when the defendant is placed on community supervision. Arguably, then, the statute does not apply in this context, and Eddie was not entitled to a PSI report. The breadth of *Whitelaw* and the strength of its language, however, suggests otherwise.

 In this case, however, we need not reach that question. An error in failing to

order a PSI report is waived if the defendant fails to object to the failure or bring the failure to the trial court's attention. *Buchanan v. State,* 68 S.W.3d 136, 140 (Tex.App.-Texarkana 2001, no pet.); *see Summers v. State,* 942 S.W.2d 695 (Tex. App.-Houston [14th Dist.] 1997, no pet.); *Wright v. State,* 873 S.W.2d 77 (Tex.App.-Dallas 1994, pet. ref'd). In this case, Eddie did not object to the trial court's failure to order a PSI report or bring it to the trial court's attention either at the hearing or in his motion for new trial. Further, this record does not indicate one was requested. Thus, he waived any complaint. We overrule this contention of error.

We affirm the judgment of the trial court.

Dissenting Opinion by Justice GRANT.

BEN Z. GRANT, Justice (Retired), dissenting.*

There are two stages in the competence-determination process. *Alcott v. State,* 51 S.W.3d 596, 601 (Tex.Crim.App.2001) (Price, J., concurring). First, the trial court conducts an inquiry into the accused's competence to stand trial. *Id.* The second stage is a hearing before the jury on the merits of the claim. *Id.*

There are two ways a defendant's competency may be raised. The first is before trial by written motion by the defendant by counsel or by the court. Tex.Code Crim. Proc. Ann. art. 46.02, § 2(a) (Vernon 1979). The competency of the defendant may also be raised during trial, as stated in the Texas Code of Criminal Procedure:

> If during the trial evidence of the defendant's incompetency is brought to the attention of the court from any source, the court *must* conduct a hearing out of the presence of the jury to determine

---

* Justice, Retired, Sitting by Assignment.

whether or not there is evidence to support a finding of incompetency to stand trial.

TEX.CODE CRIM. PROC. ANN. art. 46.02, § 2(b) (Vernon 1979) (emphasis added). If the accused's competency is raised before trial by motion or during trial, the court must conduct a preliminary inquiry into the competency of the accused.

The Texas Court of Criminal Appeals has required a trial court to possess a bona fide doubt as to the defendant's competency to trigger a competency inquiry during trial under Section 2(b). *Alcott,* 51 S.W.3d at 601. The court had said a bona fide doubt exists "if the evidence indicates recent severe mental illness, at least moderate mental retardation, or truly bizarre acts by the defendant." *Collier v. State,* 959 S.W.2d 621, 625 (Tex.Crim.App.1997). If the trial court has a bona fide doubt, the court should conduct an inquiry outside the presence of the jury, at which time the court should determine whether there is some evidence of incompetency. *Alcott,* 51 S.W.3d at 602. At that point, after the court has found a bona fide doubt of the defendant's incompetency, a mere finding of "some evidence," which constitutes a quantity more than none or a scintilla standard, of incompetency triggers an actual competency hearing before a jury. *Id.*

As the law stands now, establishing a question of the accused's competency to trigger a preliminary inquiry is more difficult to achieve than it is to meet the threshold to receive the actual competency hearing by a jury.

Because a competency inquiry is a prerequisite to reach a hearing on competency before the jury, the bona fide doubt standard should be a lower threshold than the evidence to support a finding by a jury of incompetency. As the law stands, the threshold for reaching the initial competency inquiry is *higher* than the competency hearing before a jury on the merits.

The standard by which a trial court should consider whether a defendant's competency was sufficiently raised during trial should be in accordance with the Texas Code of Criminal Procedure. Therefore, if an issue was raised during trial that questioned whether a defendant had the sufficient present ability to consult with his or her lawyer, or if an issue was raised as to whether the defendant had a rational and factual understanding of the proceedings against that defendant, then a judge should conduct a preliminary inquiry into the defendant's competency, as provided by Section 2(b). Instead, the Texas Court of Criminal Appeals has set up a requirement that the trial court should consider that bona fide doubt exists if the evidence indicates recent severe mental illness, at least moderate retardation, or truly bizarre acts by the defendant. *Collier,* 959 S.W.2d at 625. This is a judicially created standard which is not consistent with the Legislature's determination of what competency is. This departure from the substantive standard set out for mental competency to stand trial amounts to a usurping of the Legislature's law-making authority. It amounts to more than an interpretation or application of the Code of Criminal Procedure.

The present case comprised facts that sufficiently raised the defendant's competency during trial. It appears from the record that the issue of Eddie's competency was raised several times, and there was never a separate hearing inquiring about his fitness to stand trial. Specifically, before trial on the merits began, the court asked some questions of Eddie. The following was said at that time:

[EDDIE]: Well, I can't answer that question because I really don't know.

Like I said, I've had—I've seen some things—.

THE COURT: If you don't know—.

[EDDIE]: Man, somebody is trying to kill me, man. Someone—someone—I've got an audio tape that can prove my—prove my innocence. Someone's trying to kill me. Something's going on.

THE COURT: Who tried to kill you?

[EDDIE]: There's a dead guy up in Denton, Texas, that they say committed suicide. Something's going on.

THE COURT: What's that got to do with Gregg County Jail? That's what I'm asking you.

[EDDIE]: While I was up there in Denton, County, trying to clear my name—.

THE COURT: No. I'm asking you about—.

[EDDIE]:—my lawyer told me to come down to Longview—.

THE COURT: Hold on, Mr. Eddie.

[EDDIE]:—and turn myself in—.

THE COURT: Hold on.

[EDDIE]:—and then pick up Scrappy Holmes as my lawyer.

THE COURT: Listen. I told you to hold on. I'm talking right this minute. I'm talking about Gregg County confinement—whether you've been deprived [sic] any rights while you've been in Gregg County's custody. It's a simple question. Have you or haven't you?

[EDDIE]: I don't know what you're asking.

THE COURT: You know what your rights are.

[EDDIE]: No, I don't.

THE COURT: You don't?

[EDDIE]: Because I've tried to talk to some of these jailers over here, and they would answer back on the grievance form okay.

THE COURT: I find that the accused enters his plea freely, voluntarily, know-ingly, and intelligently to those three particular allegations. And the Court is going to find them true accordingly. And a plea of not true is entered to all the other allegations contained in the amended application to revoke probation. I take judicial notice of all documents on file in this cause and any proceeding in this cause over which I have personally presided. And by agreement of the Defendant and Counsel previously, this matter—the revocation and the plea of not guilty in Cause Number 28,-783–B are heard simultaneously.

In addition to Eddie's testimony raising his competency, his attorney pleaded to the trial court that Eddie was in need of psychological assistance. Moreover, Eddie's counsel introduced three letters written by Eddie that were mailed to his counsel in an attempt to raise a question as to Eddie's competency. Specifically, the letters Eddie mailed to his attorney include very explicit sexual suggestions. But more importantly, the letters raise an issue as to Eddie's competency because they illustrate he did not have the ability to consult with his attorney with a reasonable degree of rational understanding. *See* TEX.CODE CRIM. PROC. ANN. art. 46.02, § 1A(a)(1) (Vernon Supp.2003). Moreover, in one particular letter, Eddie wrote to his attorney, "Please help me [—] I need mental help."

A fact-finder may ultimately determine this evidence is self-serving on Eddie's part, but there is sufficient evidence to raise the issue of mental incompetency.

For these reasons, I would remand to the trial court to conduct an inquiry into whether the defendant was competent at the time of the trial. I respectfully dissent.