In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00197-CR


______________________________




ANTONIO REYES VASQUEZ, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 33045B




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 Antonio Reyes Vasquez pleaded guilty to a subsequent offense of driving while intoxicated
(DWI) and submitted the issue of punishment to the trial court. After having been assessed a
punishment of eleven years' imprisonment, Vasquez now appeals.

 The record reveals that Vasquez signed and filed a stipulation wherein he admitted the
offense of DWI as having occurred March 18, 2005, that he had been convicted of two previous
misdemeanor DWI charges, and that he had been convicted of a prior subsequent offense of DWI,
all of these prior offenses having occurred between 1992 and 1996. 

 In Vasquez's sole point of error, he maintains that the trial court erred in having failed to
obtain a presentence investigation (PSI) as mandated by Article 42.12, Section 9(h)(2) of the Texas
Code of Criminal Procedure, which provides:

 (h) On a determination by the judge that alcohol or drug abuse may have
contributed to the commission of the offense, . . . the judge shall direct a supervision
officer . . . to conduct an evaluation to determine the appropriateness of, and a course
of conduct necessary for, alcohol or drug rehabilitation for a defendant and to report
that evaluation to the judge. The evaluation shall be made:


 . . . .


 (2) after conviction and before sentencing, if the judge assesses punishment
in the case.


Tex. Code Crim. Proc. Ann. art. 42.12, § 9(h)(2) (Vernon 2006).

 DWI is a crime which, by its very nature, alcohol or drug abuse is apparent. Intoxication by
alcohol, coupled with the driving of a motor vehicle, constitutes the offense. Clearly, then, this is
the kind of offense which the Legislature would include among those for which a presentence
evaluation would be mandated. The statute is mandatory. Smith v. State, 91 S.W.3d 407, 409 (Tex.
App.--Texarkana 2002, no pet.); Caster v. State, 87 S.W.3d 751, 752 (Tex. App.--Texarkana 2002,
no pet.). The statute requires the trial court to order the PSI after it determines that alcohol or drug
abuse may have contributed to the commission of the offense. 

 A timely objection or request is a prerequisite to presenting a matter for appellate review. 
Tex. R. App. P. 33.1(a); see Barnett v. State, 189 S.W.3d 272 (Tex. Crim. App. 2006). It is the
burden of the parties to object to the trial court's failure to comply with a statutory requirement. See
Buchanan v. State, 68 S.W.3d 136, 139 (Tex. App.--Texarkana 2001, no pet.). This Court has
specifically held that a party must assert his right to a substance abuse evaluation or it is waived. See
Alberto v. State, 100 S.W.3d 528, 529 (Tex. App.--Texarkana 2003, no pet.); Eddie v. State, 100
S.W.3d 437, 445 (Tex. App.--Texarkana 2003, pet. ref'd); Smith, 91 S.W.3d at 410; Caster, 87
S.W.3d at 752; see also Tex. R. App. P. 33.1(a).

 In the instant case, not only did Vasquez fail to object to the imposition of sentence without
the court first having ordered and obtained a PSI, he affirmatively waived the PSI in writing and
reaffirmed that waiver in open court. A defendant in a felony case may waive his right to the
preparation of a PSI report, even when he is eligible for community supervision. Griffith v. State,
166 S.W.3d 261, 262 (Tex. Crim. App. 2005).

 In the absence of such an objection or request and, in fact, with an affirmative waiver of
objection, we may not address the issue on appeal. The contention of error is overruled.

 We affirm the judgment of the trial court.



 Bailey C. Moseley

 Justice


Date Submitted: April 16, 2007

Date Decided: May 25, 2007


Do Not Publish



"false" Priority="63" SemiHidden="false"
 UnhideWhenUsed="false" Name="Medium Shading 1 Accent 1"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00217-CR

                                                ______________________________

 

 

                              KEVIN JOSEPH MCCONNELL,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                         On Appeal from the 8th Judicial District Court

                                                           Hopkins County, Texas

                                                          Trial Court
No. 0820641

 

                                                        
                                          

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                     MEMORANDUM 
OPINION

 

            As
the result of a domestic dispute which escalated to violence, Kevin Joseph
McConnell was convicted by a Hopkins County jury for aggravated assault,
committing the assault of Angela Williams[1]
while using or exhibiting a deadly weapon (Tex.
Penal Code Ann. § 22.02(a)(2) (Vernon Supp. 2010)) with an affirmative
deadly weapon finding (Tex. Code Crim.
Proc. Ann. art. 42.12, § 3g(a)(2) (Vernon Supp. 2010).  McConnell was sentenced to ten years
imprisonment plus a fine of $10,000.00, attorneys fees, and costs, but
McConnells sentence and fine were suspended and he was placed on community
supervision for ten years.  McConnell
raises two issues on appeal, both of which challenge the sufficiency of the
evidence.  McConnell argues that the
evidence is not sufficient for a rational juror to conclude, beyond a
reasonable doubt, (1) that McConnell was guilty or (2) that McConnell used or
exhibited a deadly weapon. 

            In
the Brooks plurality opinion, the
Texas Court of Criminal Appeals found no meaningful distinction between the Jackson v. Virginia[2] legal-sufficiency standard and the Clewis[3]
factual-sufficiency standard, and these two standards have become
indistinguishable.  Brooks v. State, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010) (4-1-4
decision).  Further, a proper application
of the Jackson v. Virginia legal
sufficiency standard is as exacting a standard as any factual sufficiency
standard.  See id. at 906.  In a
concurring opinion, Judge Cochran pointed out that the United States Supreme
Court has rejected a legal sufficiency test that requires a finding that no
evidence supports the verdict because it affords inadequate protection against
potential misapplication of the reasonable doubt standard in criminal
cases.  Id. at 91617 (Cochran, J., concurring).  Rather than meeting a mere no evidence
test, legal sufficiency is judged not by the quantity of evidence, but by the
quality of the evidence and the level of certainty it engenders in the
fact-finders mind.  Id. at 91718.  We are
directed to subject challenges to the sufficiency of the evidence to the hypothetically-correct jury charge
analysis.  Malik v. State, 953
S.W.2d 234, 240 (Tex. Crim. App. 1997).  

            Under
the hypothetically-correct jury charge,[4] the
State was obligated to prove (1) that McConnell intentionally or knowingly
threatened Williams with imminent bodily injury and (2) that he used or
exhibited a deadly weapon during the commission of the assault.  Tex.
Penal Code Ann. §§ 22.01, 22.02 (Vernon Supp. 2010).  The evidence supports a conclusion that the
State met its burden.

            On
the night in question, Williams and her friend, Penny Pyron, had been on a
shopping trip to Dallas and returned to the McConnell/Williams residence late
at night.  Williams woke McConnell to
request that he rise to hang a new shower curtain she had bought; McConnell
refused to do so at that time.  After
sitting in the kitchen getting madder and madder because of McConnells
refusal, Williams returned to the bedroom and confronted McConnell.  An argument ensued in the bedroom and
Williams punched [McConnell] in the head.[5]  Williams admitted that she failed to disclose
to the investigating police officer that she had struck McConnell.  Williams (who was apparently not an extremely
enthusiastic witness for the State) denied that McConnell had hit her and
initially testified she could not remember what McConnell had said during the
confrontation.  

            At
some point during the argument, McConnell went to the kitchen and grabbed a
stick used to keep the back door shut.[6]  Although Williams denied that McConnell ever
brandished the stick at her, Pyron testified that Williams was standing in the
kitchen with her back to McConnell when McConnell swung the stick toward the
back of her head.  Pyron testified:

            A.        [By Pyron] . . . . He just came to the
back of her head like he was going to hit her 

 

            Q.        [By the State]  Okay.

 

            A.        [By Pyron]  -- and stopped right there, but he didnt --
he didnt hit her with it.

 

At some point during the evening,
McConnell used this same stick to prop the bedroom door shut to keep Williams
out.[7]  

            According
to Pyron, at some point during the argument, McConnell put his hands around
Williams neck and pinned Williams against the refrigerator.  Pyron testified that McConnell was screaming
at Williams, but Pyron did not remember what words McConnell used.  Williams admitted (only after she was
required by the State to refresh her memory of what she had told the police at
the time of the incident by reference to the police report) that McConnell had
put his hands around Williams neck and threatened to kill her.[8]  Williams later testified McConnell did not
choke her.  

            McConnells
brief argues that Williams testified that she lied to law enforcement about
this incident on the night it allegedly occurred simply because she was angry
with Appellant.  Although Williams did
testify that she called the police because she was pissed, and she admitted
that she failed to inform the police that she had hit McConnell, she did not
testify she lied to the police.  Rather,
Williams testified that her statement to the police was true, albeit admitting
she did not include everything. 
McConnell also argues that Williams was intoxicated the night of the
incident (which is quite true, Williams having testified that she had been
drinking, had taken two pills, and was intoxicated), damaging the ability of
a listener to rely on her testimony. 
Williams admission of intoxication, however, while providing the
possibility that someone might discount her veracity, does not preclude a
rational juror from believing her testimony. 
McConnells brief includes the following argument, quoted verbatim:  

Considering the testimony in a light most
favorable to the verdict negate [sic] the fact that the alleged victim was
lying, nor that the alleged eye-witness did not witness events as alleged by
the State.  Such admissions by both
witnesses causes reasonable doubt beyond mere conflicting testimony.

 

We have interpreted this argument
to be a complaint that Pyron did not witness the events which occurred in the
bedroom.  McConnell does not further
explain the phrase as alleged by the State.[9]  

            We
are not persuaded by McConnells arguments. 
The trier of fact is always free to selectively believe all or part of
the testimony proffered and introduced by either side.  Jones
v. State, 984 S.W.2d 254, 257 (Tex. Crim. App. 1998).  The fact that Pyron did not observe the
entire argument does not discredit her testimony recounting the events which
she did observe.  Although Williams
testified she did not see the stick directed toward her and was not placed in
fear for her life,[10]
a rational juror could nevertheless have concluded that McConnell threatened
Williams with imminent bodily injury. 
The jury was presented with evidence that McConnell had threatened to
kill Williams, had put his hands around Williams throat, and had pinned
Williams against the refrigerator.  The
jury can draw multiple reasonable inferences so long as each inference is
supported by evidence presented at trial.  Hooper v. State, 214 S.W.3d 9, 1516
(Tex. Crim. App. 2007).  The jury could
reasonably infer that any or all of these actions placed Williams in
apprehension of imminent bodily injury. 
Jurors may infer intent from the defendants acts, words, and conduct.  Guevara
v. State, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).  The jury could also reasonably infer that
McConnell committed these actions with the intent to cause apprehension of imminent
bodily injury or with the knowledge such apprehension could result.  

            McConnell
also argues that the evidence is insufficient to support the jurys conclusion
that McConnell used or exhibited a deadly weapon.  According to McConnell, [t]he club exhibited
at trial was not the same as the stick described at the scene, and could not be
swung in the manner described.  The
record contains conflicting evidence concerning whether the stick introduced
into evidence at trial by the State was the same stick used or exhibited by
McConnell.  Williams denied that the
States exhibit was the same stick used to prop the back door shut.  Although Pyron positively identified the
States exhibit as the stick she had seen exhibited by McConnell, she also
testified that the stick had been broken since the incident in question.  The jury was entitled to believe Pyrons
testimony over Williams testimony. 
Further, although the State is required to establish that a deadly
weapon was used or exhibited, it is not required to introduce the deadly weapon
into evidence.   

            Under
the Texas Penal Code, a deadly weapon
is (A) a firearm or anything manifestly designed, made, or adapted for the purpose
of inflicting death or serious
bodily injury; or (B) anything that in the manner of its use or intended
use is capable of causing death
or serious bodily injury.  Tex. Penal Code Ann. § 1.07(17) (Vernon
Supp. 2010).  To exhibit a deadly
weapon it need only be consciously displayed during the commission of the
offense.  Patterson v. State, 769 S.W.2d 938, 941 (Tex. Crim. App.
1989).  Pyron testified that McConnell
swung the stick at the back of Williams head. 
The jury could reasonably conclude that when used in this manner, the
stick was capable of causing death or serious bodily injury.  See
Nash v. State, 115 S.W.3d 136, 140
(Tex. App.Texarkana 2003, pet. refd) (describing factors which may be
considered).  It was within the province
of the jury to conclude McConnell used or exhibited a deadly weapon during the
commission of the offense. 

            The
evidence is sufficient.  We affirm the
trial courts judgment.

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice


Date Submitted:          January 6, 2011

Date Decided:             January
7, 2011

 

Do Not Publish











[1]Williams
had been McConnells girlfriend for twelve years.  

 





[2]Jackson v. Virginia, 443 U.S. 307
(1979).

 





[3]Clewis v. State, 922 S.W.2d 126 (Tex.
Crim. App. 1996).





[4]A
hypothetically correct jury charge
is one that accurately sets out the law, is authorized by the indictment, does
not unnecessarily increase the States burden of proof or unnecessarily
restrict the States theories of liability, and adequately describes the
particular offense for which the defendant was tried.  Malik, 953 S.W.2d at 240.  The hypothetically-correct charge, however, need
not incorporate allegations that give rise to immaterial variances.  Gollihar v. State, 46 S.W.3d 243, 256 (Tex. Crim. App. 2001).  The hypothetically-correct
jury charge must include both (1) allegations that form an integral part
of an essential element of the offense, including allegations that are
statutorily alternative manner and means and (2) material variances. Mantooth
v. State, 269 S.W.3d 68, 74 (Tex. App.─Texarkana 2008, no pet.)
(number of statute creating duty to register not integral part of essential
element); see Gollihar, 46 S.W.3d at 256.  





[5]Pyron
testified she remained in the kitchen while McConnell and Williams argued.  Pyron admitted she did not have any personal
knowledge concerning what occurred in the bedroom.

 





[6]Depending
on the weather, the back door would sometimes not stay shut and the stick had
been employed to prop the back door shut for at least four years. 





[7]The
doorknob to the bedroom was broken.

 





[8]At
the time of trial, McConnell and Williams were engaged and still living
together.  The State was allowed to treat
Williams as a hostile witness.





[9]McConnell
does not argue there were any material variances between the indictment and the
evidence presented at trial.  A
determination of whether a variance is material (i.e., prejudices a defendants
substantial rights)  requires consideration of two questions:  1) whether the indictment, as written,
informed the defendant of the charge against him sufficiently to allow such
defendant to prepare an adequate defense at trial, and 2) whether prosecution
under a deficiently drafted indictment would subject the defendant to the risk
of being prosecuted later for the same crime.  See  In re S.C., 229 S.W.3d 837, 841 (Tex. App.Texarkana 2007, pet. denied); Brown
v. State, 159 S.W.3d 703, 709 (Tex. App.Texarkana 2004, pet. refd).  McConnell does not argue his substantial
rights were prejudiced.  

 





[10]We
note there is no evidence that Williams was aware McConnell swung the stick at
her head.  Williams testified she told the
police she did not see the stick.  Pyron
testified Williams had her back to McConnell. 
McConnell, though, does not argue the evidence is insufficient because
he did not intend to cause apprehension of imminent bodily injury.  See
Teeter v. State, No. PD-1169-09, 2010 Tex. Crim. App. LEXIS 1206 (Tex.
Crim. App. Sept. 22, 2010) (not designated for publication) ([A] threat does
not require a result--that a victim knew of a threat--but it does require proof
that, by his conduct, a defendant intended to cause an apprehension of imminent
bodily injury.); see also Olivas v. State, 203 S.W.3d 341, 346 (Tex. Crim. App. 2006).  We emphasize that the issue of whether
McConnell intended to cause apprehension of imminent bodily injury by swinging
the stick was not raised for our review. 
Because we find the evidence to be sufficient regarding McConnell
knowingly threatening another with imminent bodily injury under Jackson and the hypothetically-correct
jury charge doctrine, we decline to address this unassigned issue.