In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00074-CR


______________________________




MICHAEL WAYNE MCCOLLUM, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 336th Judicial District Court


Fannin County, Texas


Trial Court No. 20558




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 Michael Wayne McCollum appeals his conviction for aggravated assault. See Tex. Penal
Code Ann. § 22.02 (Vernon Supp. 2007). McCollum was also convicted for a second charge of
aggravated assault (stemming from the same underlying motor vehicle accident), which he also
appealed. McCollum raised the same issues in both appeals. In our opinion issued today in
McCollum's companion appeal, we affirmed the trial court's judgment.

 Therefore, for the reasons stated in that companion appeal, McCollum v. State, No. 06-07-00073-CR, we affirm the trial court's judgment.

 



 Bailey C. Moseley

 Justice


Date Submitted: December 17, 2007

Date Decided: December 20, 2007


Do Not Publish



ccurred between Kersey and the trial
court:

THE COURT: Do you have any history of insanity, and by that I mean, have
you ever been confined to a mental institution or under the care of a psychiatrist for
mental problems?


[Kersey]: Yes, sir.


THE COURT: Tell me about that, when?


[Kersey]: I was young, I was about nine. I was confined to Saint Mary's
Hospital, mental institution in Rochester, Minnesota.


THE COURT: For how long?


[Kersey]: For a year.


THE COURT: Okay. Have you had any type of psychiatric care since that
time?


[Kersey]: Yes, sir, on and off all my life.


THE COURT: When was the last time?


[Kersey]: About a year ago, I went through Sabine Valley to get started back
on my medication.


THE COURT: Do you know where you are right this minute?


[Kersey]: Yes, sir.


THE COURT: Where are you?


[Kersey]: Gregg County.


THE COURT: Well, where?


[Kersey]: Courtroom, Gregg County courtroom.


THE COURT: Why are you here?


[Kersey]: Because of this case?


THE COURT: What case?


[Kersey]: The sexual assault.


THE COURT: Okay. Mr. Scott [Kersey's trial counsel], how long have you
known her?


[Counsel for Kersey]: I've known her for about three months, sir.


THE COURT: During the period of time you've been acquainted with her,
has anything come to your attention to indicate or suggest there's anything mentally
wrong with her at this time?


[Counsel for Kersey]: No, your Honor.


THE COURT: Based on the contacts that you've had with her, in your
opinion, is she presently mentally competent to appear before this Court?


[Counsel for Kersey]: She is, your Honor.


THE COURT: You are charged by grand jury indictment with the offense of
sexual assault. You have a right to have the indictment read to you at this time if you
wish. Do you want the indictment read to you or not?


[Kersey]: No, sir.


THE COURT: Are you telling me you fully understand, you fully
comprehend the exact nature of the accusation being brought against you by the bill
of indictment?


[Kersey]: Yes, sir.


 During the remainder of the plea admonishments, Kersey tells the trial court that she
understands (1) the applicable range of punishment; (2) that the trial court is not obligated to
consider awarding community supervision; (3) that any award of community supervision would be
granted pursuant to a deferment of an adjudication of guilt; (4) that the trial court could impose 180
days' confinement as a condition of community supervision; (5) that, should she decide to move to
another state and have her community supervision transferred, the recipient state is under no
obligation to accept the transfer of community supervision; (6) that, if she is granted community
supervision and the State subsequently alleges she violated the terms of her release, a hearing on
whether her supervision should be revoked will be in front of a judge, rather than a jury; (7) that if
community supervision is granted and subsequently revoked, any time she spent in jail as a condition
of community supervision does not have to be credited against any term of imprisonment ordered
during the revocation proceeding; (8) that she was waiving her right to have a presentence
investigation conducted; (9) that, if the trial court elected not to follow the parties' recommendations
regarding sentence, Kersey could not, because there had been no negotiated plea agreement,
withdraw her guilty plea; (10) that she would have to register as a sex offender as a consequence of
her plea; (11) that she could face an enhanced sentencing range if she commits a third felony in
Texas, see Tex. Penal Code Ann. § 12.42 (Vernon Supp. 2006); (12) that she was formally waiving
her right to a jury trial as part of her guilty plea; (13) that she was waiving her right to confront the
witnesses against her and permitting the State to present its evidence in written form; and (14) that,
by signing a written judicial confession, she was giving up her Fifth Amendment protection against
self-incrimination.

 Under the Texas Code of Criminal Procedure, a defendant is presumed competent to stand
trial "unless proved incompetent by a preponderance of the evidence." Tex. Code Crim. Proc.
Ann. art. 46B.003(b) (Vernon Supp. 2006). "A person is incompetent to stand trial if the person
does not have: (1) sufficient present ability to consult with the person's lawyer with a reasonable
degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings
against the person." Tex. Code Crim. Proc. Ann. art. 46B.003(a) (Vernon Supp. 2006) (emphasis
added). Article 46B.004(b) of the Texas Code of Criminal Procedure requires the trial court to
conduct an inquiry into the defendant's competence "[i]f evidence suggesting the defendant may be
incompetent to stand trial comes to the attention of the court" from any source. Tex. Code Crim.
Proc. Ann. art. 46B.004(b). But this inquiry is required only if the evidence raises a "bona fide"
doubt in the trial court's mind as to the accused's competency. Collier v. State, 959 S.W.2d 621, 625
(Tex. Crim. App. 1997); Eddie v. State, 100 S.W.3d 437, 444 (Tex. App.--Texarkana 2003, pet.
ref'd). "In general, a bona fide doubt is raised, so as to require [an inquiry], only if the evidence
indicates a recent severe mental illness, at least moderate mental retardation, or truly bizarre acts by
the defendant." Collier, 959 S.W.2d at 625 (citing Mata v. State, 632 S.W.2d 355, 359 (Tex. Crim.
App. 1982)); Eddie, 100 S.W.3d at 444; see also Alcott v. State, 51 S.W.3d 596, 602 (Tex. Crim.
App. 2001) (Price, J., concurring) ("[E]vidence available must raise a bona fide doubt.").

 In this case, the exchange between the trial court and Kersey did not suggest moderate
retardation or truly bizarre acts by Kersey. To the extent that Kersey informed the trial court she had
been hospitalized "to get started back on [her] medication," Kersey said such hospitalization
occurred more than a year before her presence at the guilty plea proceedings now at issue on appeal,
and there is no suggestion in the evidence that her year-old hospitalization was for a "severe" mental
illness. The fact that an accused has been taking prescribed psychiatric medication or has had a
history of mental illness does not, by itself, require the trial court to conduct a competency inquiry,
unless there is also evidence the accused lacks the present ability to communicate with counsel or
the ability to understand the legal proceedings. Moore v. State, 999 S.W.2d 385, 395-96 (Tex. Crim.
App. 1999); LaHood v. State, 171 S.W.3d 613, 619 (Tex. App.--Houston [14th Dist.] 2005, pet.
ref'd). In this case, Kersey's affirmative responses during the trial court's inquiry demonstrated she
had both a sufficient present ability to consult with her attorney with a reasonable degree of rational
understanding and a rational as well as factual understanding of the proceedings against her. Cf.
LaHood, 171 S.W.3d at 619 (record revealed nothing that accused had trouble understanding
proceedings or communicating with counsel); Lawrence, 169 S.W.3d at 322-23 (accused's testimony
showed not that he lacked rational or factual understanding of proceedings or ability to communicate
with counsel); Eddie, 100 S.W.3d at 444 (record revealed "lucid and rational, though troubled,
person able to carry on a dialogue").

 Kersey suggests to this Court in her brief that the trial court erred by propounding questions
to Kersey that were designed to solicit answers only supporting an affirmative finding of
competency, instead of asking questions designed to solicit answers that would support a finding of
incompetency. We do not read the trial court's question, as presented above, in such a narrow
fashion. For example, when the trial court specifically asked Kersey's counsel whether he knew of
anything suggesting Kersey was mentally ill, the court's question did not, in any way, suggest the
answer ultimately provided by counsel. Instead, we read the trial court's question as an open
invitation to counsel to provide any evidence that might suggest Kersey was currently incompetent
to stand trial. The trial court then went a step further and asked trial counsel the very specific
question of whether counsel believed Kersey to be presently competent. If Kersey or her counsel had
any evidence to suggest Kersey lacked competency, certainly such a question should have prompted
Kersey or her counsel to provide such evidence to the trial court at that time. Instead, Kersey's
counsel affirmatively stated he believed Kersey to be competent. 

 Based on the state of the evidence available to the trial court, we conclude the evidence was
insufficient to create a bona fide doubt about Kersey's competency, as that term has been defined by
our law. Accordingly, we conclude the trial court did not abuse its discretion, we overrule Kersey's
sole point of error, and we affirm the trial court's judgment.



 Jack Carter

 Justice


Date Submitted: September 19, 2006

Date Decided: October 19, 2006


Do Not Publish