

## NUMBER 13-20-00304-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

CARLOS ISRAEL RIVERA III,                                             **Appellant,**

**v.**

THE STATE OF TEXAS,                                                  **Appellee.**

### On appeal from the 214th District Court
### of Nueces County, Texas.

## MEMORANDUM OPINION

### Before Justices Benavides, Hinojosa, and Silva
### Memorandum Opinion by Justice Hinojosa

Appellant Carlos Israel Rivera III appeals the trial court's judgment revoking his community supervision, adjudicating him guilty of the offense of assault family violence, a third-degree felony, *see* TEX. PENAL CODE ANN. § 22.01(b)(2)(B), and sentencing him to eight years' imprisonment. In one issue, Rivera argues the trial court violated his due process rights by permitting the State to proceed on previously abandoned alleged

violations of Rivera's community supervision conditions. We affirm.

## I.    BACKGROUND

A grand jury returned an indictment charging Rivera with assaulting a family member by impeding the complainant's breath through applying pressure to the throat or neck. *See id*. Rivera pleaded guilty pursuant to a plea agreement, and the trial court placed him on deferred adjudication-community supervision for five years. The State later filed a motion to revoke community supervision and adjudicate guilt[1] alleging that Rivera violated his community supervision conditions by committing the following criminal offenses: (1-a)[2] possession of a controlled substance in penalty group one in an amount less than one gram; (1-b) possession of marijuana in an amount less than two ounces; (1-c) displaying or possessing a false or altered driver's license; (1-d) aggravated robbery; (1-e) aggravated assault against a public servant; (1-f) unlawful possession of a firearm; (1-g) unauthorized use of a motor vehicle; (1-h) evading arrest; (1-i) a second instance of possession of a controlled substance in penalty group one; and (1-j) aggravated assault with a deadly weapon. The State further alleged that Rivera violated his community supervision conditions by: (2-a through -g) using methamphetamine, marijuana, and benzodiazepines; (4-a through -m) failing to report as directed to his community supervision officer on thirteen separate occasions; (11) failing to pay costs, fines, and fees; and (22-d) failing to observe curfew.

---

[1] The State proceeded on its second amended motion to revoke community supervision.

[2] We number the violations as they are identified in the State's motion to adjudicate guilt.

At the outset of the adjudication hearing, the State announced it was abandoning alleged violations 1-d, 1-e, 1-f, 1-g, 1-i, and 1-j. Rivera pleaded not true to each remaining allegation. After the State called its first witness, but before any substantive testimony was elicited, the trial court granted Rivera's request to continue the hearing because the State did not serve Rivera with a witness list as required by local rule.

When the proceedings reconvened, the State announced that it was proceeding on previously abandoned allegations 1-d and 1-e. Rivera objected that allowing the State to proceed on the abandoned allegations "creates an unfairness and a prejudice[.]" The trial court overruled Rivera's objection.

Sean Barnes, a Corpus Christi Police Department (CCPD) officer testified regarding an encounter with Rivera on June 24, 2019. Officer Barnes stated that he responded to a call regarding someone who was unresponsive or asleep in a vehicle. Officer Barnes arrived at a convenience store at the corner of Weber Road and South Padre Island Drive to conduct a welfare check. When he arrived, he discovered Rivera passed out in the driver's seat of his vehicle. Officer Barnes immediately smelled a marijuana odor coming from the vehicle. He and his partner escorted Rivera out of the vehicle to perform a pat-down search, at which time Rivera "began to resist by stiffing up his arms[.]" The officers then placed Rivera in handcuffs for their safety. The officers discovered marijuana in the vehicle. In Rivera's wallet, they discovered a baggie containing suspected methamphetamine. They also discovered three separate Texas driver's licenses with Rivera's photograph but containing different names.

Saul Parra testified that he is acquaintances with Rivera. On October 24, 2019, Parra picked up Rivera and another friend at a gas station. They then drove to a residence at Rivera's request. As they neared their destination, Rivera pointed a firearm at a passenger named Patricia, demanded her phone, and ordered her out of Parra's vehicle. After Patricia exited the vehicle, Parra drove away with Rivera and another passenger in the backseat. Later, with Rivera now driving, a police vehicle attempted to pull them over. According to Parra, Rivera fired "two or three shots" at the pursuing officer before throwing the gun to Parra. During the pursuit, their vehicle collided with another car, at which point Parra "took off running."

CCPD Officer Phillip Peterson testified that on December 16, 2019, he responded to a request for backup by an officer who had stopped a stolen vehicle. When Officer Peterson arrived, the other officer was talking to someone in the passenger seat. Officer Peterson learned that the driver of the vehicle, who was later identified as Rivera, was inside a nearby store. After observing Rivera through the window, Officer Peterson went inside the store to make contact. When he entered, he immediately heard the alarm activated due to Rivera's exit through the store's emergency door. Officer Peterson pursued Rivera and observed him cross a parking lot to go behind a fence. Officer Peterson then radioed Rivera's description so that other officers could assist in his apprehension. Officer Peterson stated that Rivera was eventually apprehended across the street.

Following Officer Peterson's encounter on the same day, CCPD Officer Manuel Hernandez responded to a dispatch call concerning an officer in a "foot pursuit." Officer

4

Hernandez testified that he arrived at an apartment complex where the suspect was last seen, and he encountered Rivera, ordering him to the ground. Rivera complied, but he "stuffed his hands underneath his stomach and his chest" to prevent the officers from placing him in handcuffs. Officer Hernandez and two other officers forcibly moved Rivera's hands so that they could place him in handcuffs. Officer Hernandez concluded that Rivera was resisting arrest because "[h]e used his physical strength to keep officers from putting him in handcuffs." He also explained that Rivera was evading other officers prior to resisting arrest.

Johnny Marquez was previously Rivera's community supervision officer. Marquez testified that he went to see Rivera at the Nueces County jail following his June 24, 2019 arrest. At that time, Rivera admitted that he used $10 worth of methamphetamine and smoked a marijuana joint the prior week. Marquez administered a urinalysis, which indicated a positive result for amphetamines, methamphetamines, marijuana, and benzodiazepine or Xanax. Marquez testified that Rivera never once reported to him as required during the period of his community supervision.

Alberto Saenz, Rivera's current community supervision officer, testified that Rivera failed to report for an assessment on May 1, 2019. Saenz also testified that Rivera failed to make any payments for fines, fees, and court costs as required by his community supervision conditions.

The trial court found the following alleged violations to be true: 1-b (marijuana possession), 1-c (possessing false identification), 1-d (aggravated robbery), 1-e (aggravated assault against a public servant), 2-b (using marijuana), 2-c (using

methamphetamine), 2-d (using marijuana), 2-e (using methamphetamine), 2-f (using marijuana), 2-g (using benzodiazepines), and 4-a through -m (failing to report). The trial court found the remaining alleged violations to be not true.

Rivera's girlfriend Annette Ruiz testified as a punishment witness. Ruiz stated that she has helped Rivera with his financial difficulties and that Rivera is no longer homeless. Ruiz stated that Rivera has been working on his drug habit and that he would benefit from a rehabilitation program. For these reasons, Ruiz believed Rivera would be able to better comply with his community supervision conditions going forward.

The trial court revoked Rivera's community supervision, adjudicated him guilty for assault family violence, and sentenced Rivera to eight years' imprisonment. This appeal followed.

## II.     DISCUSSION

In his sole issue, Rivera argues that the trial court violated his due process rights by permitting the State to proceed on previously abandoned alleged violations of his community supervision conditions.

## A.     Standard of Review & Applicable Law

The trial court has discretion to revoke community supervision when the State proves by a preponderance of the evidence that the defendant violated at least one condition of his community supervision. *Cobb v. State*, 851 S.W.2d 871, 874 (Tex. Crim. App. 1993). "[A] preponderance of the evidence" means "that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his [community supervision]." *Hacker v. State*, 389 S.W.3d 860, 865 (Tex.

6

Crim. App. 2013) (citing *Rickels v. State*, 202 S.W.3d 759, 764 (Tex. Crim. App. 2006)). In determining the sufficiency of the evidence to sustain a revocation, we view the evidence in the light most favorable to the trial court's ruling. *Jones v. State*, 589 S.W.2d 419, 421 (Tex. Crim. App. 1979).

"The central issue to be determined in reviewing a trial court's exercise of discretion in a community supervision revocation case is whether the defendant was afforded due process of law." *Tapia v. State*, 462 S.W.3d 29, 41 (Tex. Crim. App. 2015); *see Leonard v. State*, 385 S.W.3d 570, 577 (Tex. Crim. App. 2012). As relevant to this case, the minimum requirements of due process include written notice of the claimed violations of community supervision. *Tapia*, 462 S.W.3d at 41–42 (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973)). A motion to revoke or adjudicate guilt must fully inform a probationer of the conditions which he allegedly violated. *Labelle v. State*, 720 S.W.2d 101, 104 (Tex. Crim. App. 1986); *see also Johnson v. State*, No. 01-13-00298-CR, 2014 WL 890918, at *2 (Tex. App.—Houston [1st Dist.] Mar. 6, 2014, pet. ref'd) (mem. op., not designated for publication). An allegation is sufficient if it provides fair notice so that the defendant can prepare a defense. *Spruill v. State*, 382 S.W.3d 518, 520 (Tex. App.—Austin 2012, no pet.).

Like other errors, constitutional errors are subject to harmless error review. *See* TEX. R. APP. P. 44.2(a); *see also Anderson v. State*, No. 09-19-00206-CR, 2020 WL 6749940, at *5 (Tex. App.—Beaumont Nov. 18, 2020, no pet.) (mem. op., not designated for publication). In examining constitutional errors, the court "must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that

7

the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a). Stated differently, we must determine whether there is a reasonable possibility that the error might have contributed to the conviction. *Love v. State*, 543 S.W.3d 835, 846 (Tex. Crim. App. 2016); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g). This review requires the Court to calculate the probable impact on the factfinder in light of the existence of other evidence. *Love*, 543 S.W.3d at 846. There is no exclusive list of considerations; instead, we consider any circumstance that informs whether the error contributed to the conviction or punishment. *Id*. Unlike our review of the sufficiency of the evidence, a harmless error review requires us to evaluate the entire record in a neutral manner. *Id*.

## B. Analysis

Rivera's due process complaint is premised on the trial court having found true two violations which the State previously abandoned: 1-d—alleging that Rivera committed the offense of aggravated robbery—and 1-e—alleging that Rivera committed the offense of aggravated assault against a public servant.

Assuming, without deciding, that Rivera's appellate issue comports with his objection in the trial court[3] and that the trial court's actions constituted error, we conclude that such error was harmless. In addition to finding true the previously abandoned violations, the trial court also found true twenty-one other violations, which included the commission of two additional criminal offenses, multiple instances of drug use, and

---

[3] A defendant must preserve an argument that the procedure used to revoke his community supervision failed to comply with due process. *See Tapia v. State*, 462 S.W.3d 29, 37 (Tex. Crim. App. 2015); *Sneed v. State*, 493 S.W.3d 218, 220 (Tex. App.—Fort Worth 2016, no pet.); *Eddie v. State*, 100 S.W.3d 437, 441 n.2 (Tex. App.—Texarkana 2003, pet. ref'd).

repeated failures to report to Rivera's community supervision officer. "Proof of a single violation of community supervision is sufficient to support a trial court's decision to revoke community supervision, and we must affirm a trial court's judgment if an appellant does not challenge each ground on which the trial court revoked community supervision." *Olabode v. State*, 575 S.W.3d 878, 880–81 (Tex. App.—Dallas 2019, pet. ref'd) (internal citations omitted). Having reviewed the record in the appropriate light, we conclude that the State established each of the twenty-one "non-abandoned" violations by a preponderance of the evidence. *See Hacker*, 389 S.W.3d at 865.

The State presented evidence that on June 24, 2019, officers discovered marijuana in a vehicle which was solely occupied by Rivera. During this same encounter, officers discovered false identification cards in Rivera's wallet with his photograph but containing three separate names. Such evidence demonstrates that Rivera violated his community supervision conditions by engaging in unlawful conduct, particularly by possessing marijuana and false driver's licenses. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(a) ("[A] person commits an offense if the person knowingly or intentionally possesses a usable quantity of marihuana."); TEX. TRANSP. CODE ANN. § 521.451(a)(1) ("[A] person may not display, cause or permit to be displayed, or have in the person's possession a driver's license or certificate that the person knows is fictitious or has been altered[.]"). The State further presented uncontroverted evidence that Rivera never once reported to his community supervision officer during the period of his community supervision, resulting in thirteen separate violations of his community supervision conditions. Finally, the State presented evidence that Rivera violated his community

9

supervision conditions by using "narcotics or any other controlled substance" on multiple occasions. Rivera admitted to his community supervision officer to using both marijuana and methamphetamine. Furthermore, Rivera tested positive for methamphetamine, marijuana, and benzodiazepines.

Even if we were to disregard the trial court's finding of true as to the previously abandoned allegations, its ruling would still constitute a reasonable exercise of its discretion. Further, there is no indication that Rivera's ability to prepare a defense regarding the remaining violations was impacted by the alleged error. For the foregoing reasons, we perceive no "probable impact" from the alleged due process violation on the trial court's ruling. *See Love*, 543 S.W.3d at 846. Therefore, we conclude "beyond a reasonable doubt" that allowing the State to proceed on its previously abandoned allegations "did not contribute to the conviction or punishment." *See* TEX. R. APP. P. 44.2(a); *Smith v. State*, 290 S.W.3d 368, 375 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (concluding that the appellant was not harmed by erroneously admitted testimony that was unrelated to six other violations which the trial court found true); *see also Hernandez–Prado v. State*, No. 03-15-00289-CR, 2016 WL 3144098, at *10 (Tex. App.— Austin May 26, 2016, pet. ref'd) (mem. op., not designated for publication) (concluding that appellant was not harmed by inadequate notice of alleged violations of community supervision conditions). We overrule Rivera's sole issue.

### III.    CONCLUSION

We affirm the trial court's judgment.

LETICIA HINOJOSA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
8th day of April, 2021.

11