COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  |  |  |
|---|---|---|
| MOSTAFA ARAM AZADPOUR, | § | No. 08-11-00309-CR |
|  | § |  |
| Appellant, | § | Appeal from |
|  | § |  |
| v. | § | County Criminal Court No. 8 |
|  | § |  |
| THE STATE OF TEXAS, | § | of Tarrant County, Texas |
|  | § |  |
| Appellee. | § | (TC # 1210111) |
|  | § |  |

## **O P I N I O N**

Mostafa Aram Azadpour, *pro se*, appeals his conviction of criminal trespass.[1]  A jury

found Appellant guilty and the court assessed punishment at 180 days in jail, probated for two

years, and a fine of $2,000, half of which is probated.  We affirm.

### **FACTUAL SUMMARY**

Emily Murphy is employed by the City of Euless as a court clerk.  On February 11, 2009,

Murphy was told that Appellant would be coming to the office to retrieve something and she was

shown the envelope intended for him.  Appellant arrived at around 11 a.m. and Murphy gave him

the envelope.  Appellant opened it and then shoved it back under the glass.  Appellant appeared

to be angry.  He told Murphy it was unacceptable and he asked to see the court manager, Ms.

---

[1] Appellant represented himself at trial but retained an attorney for appeal.  After Appellant's brief and reply brief had been filed, but prior to the submission date, the court was notified that counsel had died.  The court gave Appellant an opportunity to retain new counsel but he declined to do so.

Alexander. Murphy told him that Alexander was in a meeting and Appellant left. After a few minutes, Appellant came back into the clerk's office and waited in line while Murphy helped another customer with a ticket. Murphy was explaining deferred adjudication to the man and told him that he could not get another traffic ticket in Tarrant County for ninety days. Appellant suddenly yelled, "Euless, only Euless." She repeated to the customer that it was ninety days in Tarrant County and Appellant again interrupted her by yelling "Euless, only Euless." Murphy found it difficult to help the customer at the counter because Appellant, who appeared agitated and upset, continued to interrupt her by speaking in a loud voice. Officer Pamela Byers came over and asked Appellant to not interfere with Murphy and her customer.

Pamela Joy Byers is a police officer with the City of Euless and she is assigned to the Euless municipal courts as a warrant officer and bailiff. When Appellant arrived at the municipal court, the clerks notified Byers because Appellant had a history of being verbally abusive. Byers went out into the lobby and stood where she could be seen by Appellant as she had on prior occasions. Appellant was in line and other individuals were standing in line behind him. In order to not intimidate the individuals standing in line, Byers played Solitaire on her PalmPilot while standing in the lobby in the event she needed to intervene. Appellant began yelling at Byers and told her that what she was doing was subject to open records. Byers showed him the screen and explained that she was only playing Solitaire. The other individuals in line behind Appellant began laughing when they saw the screen but Appellant continued to yell about her using the PalmPilot to record what he was doing. Appellant became so agitated that the other individuals in the line began backing away. In an effort to calm Appellant, Byers told him he should make any requests he wanted.

One of the clerks, Emily Murphy, was speaking to a man about his citation and explaining the rules of "deferred" to him when Appellant began yelling at the clerk and disagreeing with her instructions given to the man. Byers instructed Appellant to stop interfering with the clerk and to mind his own business. She then told him to go over to the open clerk's window but Appellant began demanding copies of the video taken by the cameras in the lobby. Byers continued to tell Appellant to step over to the clerk's window to take care of his business. Appellant went to the window but he continued to yell at Byers and at a second police officer, Donald Lee Scott, who had arrived to assist Byers. Byers finally told Appellant to calm down and take care of his business or leave, but he continued to argue. Consequently, both Byers and Scott repeatedly instructed Appellant to leave the building or he would be arrested for trespass. Appellant refused to leave. Officer Scott attempted to take Appellant's arm to escort him from the building but Appellant jerked his arm away. Scott then grabbed Appellant by the arm and both officers escorted him out of the lobby and into the vestibule. At that point, Appellant began calling Scott an obscene name and repeatedly stating, "This is bullshit." Byers instructed Scott to retrieve her ticket book write Appellant a citation for disorderly conduct. Byers attempted to calm Appellant but he backed out of the building while continuing to repeat "This is bullshit." When Appellant began heading toward his car, Byers stopped him because he was so enraged and she was concerned for her safety and the safety of other people in the parking lot. Byers told Appellant he was under arrest but he continued moving toward his car, a convertible, while yelling profanities. Byers became concerned that Appellant might have a weapon in the vehicle and she again told him he was under arrest. She got behind Appellant and instructed him to put his hands behind his back but he refused to comply. Byers reached for Appellant's left arm to control him but he pulled away from her. Appellant pulled out his cell phone, called 911, and

- 3 -

stated he was being attacked in the parking lot. Byers could not handcuff Appellant because he kept pulling his arms away from her and he pushed her arm each time she attempted to grab him. Byers radioed for assistance in the parking lot and then placed Appellant in a bear hug to prevent him from getting in the car. Sergeant David Chaney saw Byers struggling with Appellant and he stopped to assist her. Chaney put Appellant in a wrist lock and Byers was able to handcuff him. Byers then took Appellant back into the building.

The State charged Appellant with resisting arrest and criminal trespass. The cases were tried together before a jury and Appellant represented himself. Appellant testified that he was at the municipal court on February 11, 2009 to retrieve a record of a trial for an appeal from a municipal court. He denied creating any disturbances and said that he was standing quietly and patiently when Byers and Scott "jump[ed] on [him]." He also denied committing criminal trespass because he had a right of access and he was there to conduct legitimate business. Appellant expressly denied refusing to leave. He did admit resisting the officers' efforts to seize his cell phone and his notebook and said that he resisted so that he could throw those items into his convertible. Appellant freely and voluntarily gave his hand to the officer after he put those items in the car. The jury rejected Appellant's defense and found him guilty of both offenses.

## LEGAL SUFFICIENCY

In his first issue, Appellant challenges the legal sufficiency of the evidence supporting his conviction of criminal trespass.

### Standard of Review

The legal sufficiency standard articulated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is the only standard a reviewing court applies in determining whether the evidence is sufficient to support a conviction. *Brooks v. State*, 323 S.W.3d 893, 894-

95 (Tex.Crim.App. 2010). Under the *Jackson* standard, a reviewing court must consider all evidence in the light most favorable to the verdict and in doing so determine whether a rational justification exists for the trier of fact's finding of guilt beyond a reasonable doubt.[2] *Brooks*, 323 S.W.3d at 894-95, *citing Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. The trier of fact is the sole judge as to the weight and credibility of witness testimony, and therefore, on appeal we must give deference to those determinations. *See Brooks*, 323 S.W.3d at 894-95. If the record contains conflicting inferences, we must presume the trier of fact resolved such facts in favor of the verdict and defer to that resolution. *Id*. On appeal, we serve only to ensure the trier of fact reached a rational verdict. *Id*. We may not reevaluate the weight and credibility of the evidence produced at trial and in so doing, substitute our judgment for that of the fact finder. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App. 2000). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007).

A person commits the offense of criminal trespass if he enters or remains on or in property of another, including a building, without effective consent and he received notice to depart but failed to do so. TEX.PENAL CODE ANN. § 30.05(a)(2)(West Supp. 2012). Notice means oral or written communication by the owner or someone with apparent authority to act for the owner. TEX.PENAL CODE ANN. § 30.05(b)(2)(A). Consistent with Section 30.05(a)(2) and (b)(2)(A), the information alleged that Appellant intentionally or knowingly entered and remained in or on property owned by another without the effective consent of the owner, and

---

[2] The *Jackson* standard of review requires the appellate court to review all of the evidence admitted at trial. The trial court admitted into evidence two DVDs, State's Exhibits 1 and 2. State's Exhibit 1 is a recording from a camera in the lobby of the municipal court building. State's Exhibit 2 is a record from a camera in the parking lot. Appellant has filed a motion to have State's Exhibits 1 and 2 forwarded to this Court for our review. We entered an order requiring the official court reporter and/or the trial court clerk to prepare and file a supplemental record containing those two exhibits. The supplemental record has been filed and the court has reviewed the exhibits.

Appellant had notice to depart but failed to do so.    An appellate court is required to measure the sufficiency of the evidence by the elements of the offense as defined in a hypothetically correct jury charge. *Cada v. State*, 334 S.W.3d 766, 773 (Tex.Crim.App. 2011).  Such a charge is one that accurately sets out the law, is authorized by the charging instrument, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Cada*, 334 S.W.3d at 773; *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997).    In this case, the hypothetically correct jury charge would require the State to prove beyond a reasonable doubt that Appellant intentionally or knowingly remained on the property of another without effective consent and he had received oral communication to depart by someone in apparent authority, but he failed to do so.

*Refusal to Leave*

Appellant first argues that he cannot be convicted of criminal trespass because he departed the building after being asked to do so.  As part of this argument, he asserts that the officers did not form the intent to arrest him for criminal trespass until after he had exited the building.  The point at which the officers formed an intent to arrest Appellant is not a defense to the offense and it is irrelevant to our sufficiency review.  The sole issue before us is whether the evidence heard by the jury is legally sufficient under the *Jackson* standard to support Appellant's conviction.   Criminal trespass contemplates a "volitional refusal to leave when requested." *Spingola v. State*, 135 S.W.3d 330, 336 (Tex.App.--Houston [14th Dist.] 2004, no pet.); *Reed v. State*, 762 S.W.2d 640, 646 (Tex.App.--Texarkana 1988, pet. ref'd).

Several witnesses testified Officer Scott repeatedly instructed Appellant to leave the municipal courts building, but he refused to do so.  Appellant left the building only after Officer

Scott took hold of Appellant's arm and escorted him out. The jury was not required to believe Appellant's testimony that he did not refuse to leave. Although Appellant eventually left the premises after being escorted to the vestibule by Officers Scott and Byers, he exercised a volitional refusal to leave upon Scott's request to depart. We conclude that the evidence is sufficient to permit a rational trier of fact to find beyond a reasonable doubt that Appellant had notice to depart and he failed to do so.

*Greater Right to Possession*

Appellant next argues that Officer Scott did not have a great right of possession because Appellant has a right to be on the premises to conduct court business. Under Section 30.05, the State is required to allege and prove that Appellant, without effective consent, remained on the property of another when he had received notice to depart and failed to do so. TEX.PENAL CODE ANN. § 30.05(a)(2). "Another" is defined to mean a person other than the actor. TEX.PENAL CODE ANN. § 1.07(a)(5)(West Supp. 2012). Section 30.05 does not require the State to prove ownership of the property. *Langston v. State*, 855 S.W.2d 718, 721 (Tex.Crim.App. 1993). In this case, however, the State went further than the statute required and alleged that Appellant remained on property owned by another. It was therefore obligated to prove ownership beyond a reasonable doubt. *Arnold v. State*, 867 S.W.2d 378, 379 (Tex.Crim.App. 1993). The State can meet this burden by proving that the complainant has a greater right to possession of the property than the actor. TEX.PENAL CODE ANN. § 1.07(a)(35)(A); *Arnold*, 867 S.W.2d at 379. "Possession" means actual care, custody, control, or management. TEX.PENAL CODE ANN. § 1.07(a)(39).

Officer Scott is a police officer who serves as a warrant officer and security officer for the municipal court. When Appellant, who was obviously agitated and angry, began interfering

with the clerk who was assisting another customer and creating a disturbance, Scott repeatedly asked Appellant to leave. Appellant refused to leave and Scott decided to remove Appellant to protect the safety of other people in the lobby. Appellant certainly has a right to enter the building for the purpose of transacting business with the municipal courts, but that right does not include interfering with the municipal court clerk or creating a disturbance. As a police officer charged with maintaining security in the municipal courts building, Officer Scott had a greater right to the actual care, custody, control, and management of the building than Appellant under the circumstances presented in this case. Issue One is overruled.

## PROCEDURAL DUE PROCESS

In Issue Two, Appellant complains that his removal from the municipal courts building by the police officers violates his constitutional right to procedural due process because the decision was made before he had a chance to present any evidence and without any evidence being presented against him. He cites *Anthony v. State*, 209 S.W.3d 296, 306 (Tex.App.--Texarkana 2006, no pet.) in support of his argument. The State responds that Appellant failed to preserve this issue for review.

To preserve a complaint for appellate review, the record must show Appellant made a timely and specific request, objection, or motion. *See* TEX.R.APP.P. 33.1(a)(1); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex.Crim.App. 2004). Except for complaints involving systemic or absolute requirements, or rights that are waivable only, all other complaints, whether constitutional, statutory, or otherwise, are forfeited by failure to comply with Rule 33.1(a). *Mendez*, 138 S.W.3d at 342. If a party fails to properly object to constitutional errors at trial, these errors can be forfeited. *Clark v. State*, 365 S.W.3d 333, 339 (Tex.Crim.App. 2012). Even due process rights can be waived by failure to object. *See Hull v. State*, 67 S.W.3d 215, 218

(Tex.Crim.App. 2002); *Eddie v. State*, 100 S.W.3d 437, 440 (Tex.App.--Texarkana 2003, pet. ref'd). Appellant did not raise in the trial court -- by means of a timely and specific motion, objection, or request -- a claim that his prosecution under Section 30.05 violated his right to procedural due process. He alleged in his motion for new trial that on the ground that "criminal trespass as applied" is unconstitutional, but that objection is too general to preserve the argument presented on appeal. *See Denison v. State*, 651 S.W.2d 754, 760 (Tex.Crim.App. 1983)(a general objection does not preserve error). Consequently, it is waived. We overrule Issue Two. .

### MOTION TO QUASH

In his third issue, Appellant contends that the trial court erred by denying his motion to quash because the State failed to charge a valid offense and the charging instrument was vague and ambiguous. Appellant argues that the amended information was confusing because it alleged that he both entered and remained in or on property owned by another.

*Standard of Review and Applicable Law*

The sufficiency of a charging instrument is a question of law. *State v. Moff*, 154 S.W.3d 599, 601 (Tex.Crim.App. 2004). A trial court's ruling on a motion to quash is subject to *de novo* review. *Id*.

An indictment is sufficient when it charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged. TEX.CODE CRIM.PROC.ANN. art. 21.11 (West 2009). The same requirements apply to an information. TEX.CODE CRIM.PROC.ANN. art. 21.23 (West 2009). The charging instrument must convey sufficient notice to allow the accused to prepare his defense. *State v. Mays*, 967 S.W.2d 404, 406 (Tex.Crim.App. 1998).

*The Information*

Section 30.05(a) of the Penal Code provides that a person commits an offense if the person enters or remains on or in property of another, including residential land, agricultural land, a recreational vehicle park, a building, or an aircraft or other vehicle, without effective consent and the person:

(1)  had notice that the entry was forbidden; or

(2)  received notice to depart but failed to do so.

The amended information alleged that Appellant intentionally or knowingly entered and remained in or on property owned by another without the effective consent of the owner, and Appellant had notice to depart but failed to do so.  The amended information tracked the statutory language of Section 30.05(a)(2) of the Penal Code.  Subject to rare exceptions, a charging instrument which tracks the language of the statute will satisfy constitutional and statutory requirements.  *Mays*, 967 S.W.2d at 406.  The State is not required to allege facts that are merely evidentiary in nature.  *Id.*  If the language of the statute is itself completely descriptive of the offense, a charging instrument is sufficient if it follows the statutory language. *Id.*  Section 30.05(a)(2) meets this test.  Consequently, the information provided Appellant with sufficient notice to prepare his defense.

Appellant also contends that the State was required to elect whether it relied on the "entered" or "remained" theory.  We understand him to argue that the State could only charge him with one means of committing the offense of criminal trespass.  If a statute sets out several ways for committing an offense, and those ways embrace the same definition, are punishable in same manner, and are not repugnant to each other, the State need not elect between various theories alleged; rather, the jury may consider all of the theories and return a general verdict of

- 10 -

guilty. *Hartis v. State*, 183 S.W.3d 793, 800 (Tex.App.--Houston [14th Dist.] 2005, no pet.); *see Gray v. State*, 980 S.W.2d 772, 775 n.2 (Tex.App.--Fort Worth 1998, no pet.)(stating that alternative pleading of differing methods of committing one offense may be charged in one indictment). The State may specifically allege, in the conjunctive or disjunctive, any or all of the statutorily-defined types of conduct regarding an offense. *Hartis*, 183 S.W.3d at 800. Such a charging instrument still places a defendant on clear notice of what the State will attempt to prove at trial. *Hartis*, 183 S.W.3d at 800. The information alleged the commission of one offense, criminal trespass, through two different means, entered on property of another and remained on property of another. This provided Appellant with sufficient notice that he should prepare to defend against both theories of criminal trespass. *See State v. Garrett*, 798 S.W.2d 311 (Tex.App.--Houston [1st Dist.] 1990), *aff'd*, 824 S.W.2d 181 (Tex.Crim.App. 1992). Issue Three is overruled.

## WITHDRAWAL OF WAIVER OF COUNSEL

In Issue Four, Appellant argues that the trial court failed to properly admonish him when he indicated a desire during trial to withdraw his waiver of the right to counsel. He also asserts that the court denied him the effective assistance of standby counsel.

The facts related to these issues are somewhat complex because more than one judge presided over the cases and Appellant vacillated on whether he wished to have standby counsel. The misdemeanor information was filed on March 2, 2009. Appellant initially waived his right to counsel but he later retained counsel, Danny Burns, who made an appearance in the case on October 19, 2009. On October 12, 2010, Appellant filed a motion to substitute counsel in which he requested that the court permit him to represent himself. He alternatively requested that

Burns remain as standby counsel. At the hearing on the motion, the trial judge[3] stated on the record that she had previously given Appellant the required warnings about the dangers of self-representation. The court admonished Appellant that it was in his best interest to be represented by counsel and if he represented himself he would be held to the same standards as an attorney and he would be expected to be aware of the rules of evidence and procedure. The trial court granted the motion. The court ordered that Burns would remain at all hearings and the trial as standby counsel for Appellant. Appellant's cases were subsequently transferred to County Criminal Court Number Eight of Tarrant County. The Honorable Daryl R. Coffey, Judge of County Criminal Court Number Eight, conducted a hearing on pretrial motions on April 27, 2011 and addressed Appellant's qualifications to represent himself. Appellant testified that he had just turned 50 years of age and he was unemployed at the time but he did contract engineering work. Appellant has a bachelor's degree and a master's degree and he had done some research for a Ph.D. in electrical engineering and computer science. Appellant had the ability to read and comprehend the law. The trial judge stated on the record that he had read the numerous motions Appellant had filed and concluded that the motions were of good form and literate. Appellant told the court that he had represented himself in the Euless Municipal Court and in federal court in a California discrimination case which went to the United States Supreme Court. The court advised Appellant that by representing himself he would be required to follow the law, the rules of evidence, and the rules of the court. Appellant stated that he understood and he volunteered that he knew he could not claim ineffective assistance of counsel. Appellant also told the court that Burns had represented him for about a year and a half in the case but he began representing himself due to what he believed was ineffective assistance of counsel by Burns. The court

---

[3] Appellant's cases were originally filed in County Criminal Court Number Four of Tarrant County and the Honorable Deborah Nekhom conducted the hearing.

concluded Appellant was competent to represent himself and advised Appellant that he was going to let him represent himself in this case. Later during this same hearing, Appellant had the following exchange with the trial court:

[Appellant]: I have two administrative issues I would like to bring up, Your Honor.

[The Court]: Okay.

[Appellant]: One is that when we had the substitution of counsel, Mr. Danny Burns, the Order of Substitution is written such that his presence is required at all hearings and I assume trial, and --

[The Court]: I'm not going -- I'm going to rescind that.

[Appellant]: Great. That's why I was trying to get clarification --

[The Court]: You're -- you're stuck with yourself.

[Appellant]: That is the way I want it.

A few weeks before trial, Appellant had a subpoena duces tecum issued for Burns to appear at trial. On the day of trial, Appellant filed a motion in cause number 1148393 (the resisting arrest case) requesting the presence of Burns during trial as his standby attorney. The record does not reflect that Appellant ever presented the motion to the trial court or obtained a ruling.

Prior to voir dire, the trial judge addressed Appellant's right to counsel. Appellant persisted in his desire to waive counsel and he signed a written waiver of the right to counsel. At the beginning of trial, the State invoked the Rule which had the effect of excluding Burns from the courtroom.

At the conclusion of the State's case-in-chief and just before a lunch break, the trial court asked Appellant whether he wished to present any evidence. Appellant told the trial court that he wished to consult with standby counsel, Mr. Burns, before making that decision. The court

- 13 -

reminded Appellant that the prior order making Burns standby counsel had been rescinded and Appellant was representing himself. The court gave Appellant the opportunity to consult with Burns or anyone he wished during the lunch break. After the break, Burns came into the courtroom in the event he was needed as standby counsel. The court informed Burns that he could assist Appellant if he wished but he would not be allowed to sit at counsel table. Since Appellant had issued a subpoena for Burns, the court asked Appellant whether he was going to call him as a witness. When Appellant indicated that he would not release Burns from the subpoena, the court swore Burns as a witness and instructed him to sit outside in the hallway. The court informed Appellant that Burns could not assist him and also be a witness in the case.

Later, during the defense's case-in-chief, Appellant asked whether Burns was still present and the trial court informed him that he was, but Appellant had subpoenaed him as a witness and the Rule had been invoked. The court gave Appellant the choice of calling him as a witness or releasing him from the subpoena. Appellant explained that he wanted to release him as a witness so he could ask him a question. The court released Burns from the subpoena and told Appellant that he could speak with him during the break, but Burns would not be permitted to sit at counsel table with him.

*Applicable Law*

A criminal defendant has a right to the assistance of counsel in state court, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. *Hatten v. State*, 71 S.W.3d 332, 333 (Tex.Crim.App. 2002), *citing Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The United States Supreme Court recognized in *Faretta v. California* that a criminal defendant also has the right to waive counsel and represent himself. *Faretta v. California*, 422 U.S. 806, 818-20, 95 S.Ct. 2525, 2532-33, 45 L.Ed.2d 562 (1975);

- 14 -

*Hatten*, 71 S.W.3d at 333. To be constitutionally effective, such a decision must be made competently, voluntarily, knowingly, and intelligently. *Godinez v. Moran*, 509 U.S. 389, 400, 113 S.Ct. 2680, 2687, 125 L.Ed.2d 321 (1993); *Faretta*, 422 U.S. at 835-36, 95 S.Ct. at 2541. The decision is made knowingly and intelligently if made with a full understanding of the right to counsel, which is being abandoned, as well as the dangers and disadvantages of self-representation. *Faretta*, 422 U.S. at 835-36, 95 S.Ct. at 2541; *Williams v. State*, 252 S.W.3d 353, 356 (Tex.Crim.App. 2008).

The Court of Criminal Appeals has held on several occasions that there is no constitutional right to hybrid representation. *See e.g., Dunn v. State*, 819 S.W.2d 510, 525-26 (Tex.Crim.App. 1991); *Scarbrough v. State*, 777 S.W.2d 83, 92 (Tex.Crim.App. 1989); *Landers v. State*, 550 S.W.2d 272, 280 (Tex.Crim.App. 1977). In *Scarbrough*, the Court of Criminal Appeals held that the admonishments regarding the dangers and disadvantages of self-representation should include making the accused aware that there is no right to standby counsel. *Scarbrough*, 777 S.W.2d at 93. If the defendant asserts a desire for self-representation, but also indicates he would prefer what actually amounts to hybrid representation, the trial court should decide at the earliest practicable moment whether to allow it, and if not, should inform the defendant he must choose instead between two mutually exclusive rights--the right to self-representation or to representation by counsel--and inform him that there is no "middle ground." *Id.* If hybrid representation is not to be a permissible option, the defendant must be made aware of that circumstance, and given the opportunity, thus informed, to reassert his right to self-representation. *Id.* If he continues to insist on conducting his own defense, but only with the selective aid of counsel, it may be said his assertion of the right to self-representation is "conditional," and thus, equivocal. *Id.*

*Analysis*

The issue of hybrid representation and standby counsel came up several times in the trial court. First, at the November 18, 2010 hearing on Appellant's motion to substitute himself for retained counsel, Appellant asked if Burns could act as standby counsel. Judge Nekhom made it clear that Appellant did not have a right to hybrid representation and told him bluntly, "When you're pro se, you're pro se." The court continued to emphasize that Appellant would be responsible for representing himself, but told him that if Mr. Burns was willing to advise Appellant, she would permit it. The court ordered that Burns would remain at all hearings and the trial as standby counsel for Appellant. Judge Nekhom's admonishments regarding hybrid representation complied with *Scarbrough*.

Approximately five months later, Judge Coffey conducted a pretrial hearing and addressed Appellant's qualifications to represent himself. After the court determined that Appellant was competent to represent himself, Appellant brought up the prior order making Burns the standby counsel. Judge Coffey told Appellant he would not permit standby counsel and he was going to rescind the order. Appellant did not object to that ruling and in fact indicated his agreement. Thus, the record does not reflect that Appellant made a conditional assertion of his right to self-representation.

Appellant did not bring up the subject of standby counsel again until the day of trial, June 14, 2011, when he filed a "notice" requesting the presence of standby counsel, but he did not present his request to the court or obtain a ruling on it. At the conclusion of the State's case-in-chief and again during the defense's case-in-chief, Appellant broached the subject of standby counsel. The court reminded Appellant that he had rescinded the order making Burns standby counsel. A short time later, Appellant asked the court whether Burns was present because he

wanted to ask him a question. The court permitted Appellant to consult with Burns. Appellant did not indicate that he wished to withdraw his waiver of the right to counsel and the record does not support a finding that Appellant's assertion of his right to represent himself was conditional or equivocal. Appellant's first argument is without merit.

*Denial of Effective Assistance of Standby Counsel*

Appellant also argues that he was denied the effective assistance of standby counsel. Given that there is no constitutional right to hybrid representation, courts have held that there is no corresponding constitutional right to the effective assistance of standby counsel. *See, e.g., United States v. Oliver*, 630 F.3d 397, 413-14 (5th Cir. 2011); *United States v. Morrison*, 153 F.3d 34, 55 (2nd Cir. 1998); *United States v. Windsor*, 981 F.2d 943, 947 (7th Cir. 1992). Even assuming for the sake of argument that there is such a right, the record does not support Appellant's claim that he was deprived of the effective assistance of standby counsel. Appellant agreed with Judge Coffey's decision to rescind the order appointing standby counsel. It was only later during trial that Appellant requested the assistance of standby counsel. Appellant had, however, subpoenaed Burns for trial. When Appellant refused to release Burns from the subpoena, the trial court swore Burns as a witness and instructed him to remain outside of the courtroom. TEX.R.EVID. 614. After Appellant released Burns from the subpoena, the court permitted Appellant to consult with Burns. Thus, the record reflects that Appellant created the situation which caused Burns to be excluded from the courtroom for a time during the trial. Appellant has failed to show that the trial court denied him the effective assistance of standby counsel. For all of these reasons, we overrule Issue Four.

**CONSOLIDATION OF THE CASES**

In his final issue, Appellant contends that the trial court erred by consolidating the

resisting arrest and criminal trespass cases for trial. The State responds that Appellant's motion to sever filed on the day of trial was untimely, and alternatively, any error is harmless.

Section 3.02 of the Penal Code provides that a defendant may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode. TEX.PENAL CODE ANN. § 3.02(a)(West 2011). If the State properly joins two offenses pursuant to Section 3.02, the defendant has a right to sever the cases into different trials if he timely invokes that right. TEX.PENAL CODE ANN. § 3.04(a). When a defendant timely requests a severance under Section 3.04(a), his right to a severance is absolute and the severance is mandatory. *King v. State*, 189 S.W.3d 347, 353 (Tex.App.--Fort Worth 2006, no pet.). A motion to sever must be raised before trial. *See Thornton v. State*, 986 S.W.2d 615, 617 (Tex.Crim.App. 1999). Appellant did not file a written motion to sever until the day of trial. He did file a written notice on April 1, 2011 objecting to consolidation of the two cases and he informed the trial court during a pretrial hearing that he opposed consolidation. We find that Appellant timely and specifically objected to consolidation of the cases. *See Ford v. State*, 782 S.W.2d 911, 912 (Tex.App.--Houston [14th Dist.] 1989, no pet.)(stating that the defendant's complaint is sufficient if it apprises the trial court that he does not desire to have the offenses joined in a common trial). The trial court erred by consolidating the cases over Appellant's objection.

Severance error is not structural error and is subject to a harm analysis under TEX.R.APP.P. 44.2(b). *Llamas v. State*, 12 S.W.3d 469, 470-71 (Tex.Crim.App. 2000). Under Rule 44.2(b), any error that does not affect a substantial right must be disregarded. A substantial right is affected when the error had a substantial and injurious effect or influence on the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997). Substantial rights are not affected if, after examining the record as a whole, we have fair assurance that the error did not

influence the jury, or had but a slight effect. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex.Crim.App. 2002).

In the case of the erroneous denial of a motion for severance, the error is harmless if the offenses are intertwined in one inseparable transaction, because evidence of one offense would have been admissible as same transaction contextual evidence in the separate prosecution of the other offense. *King*, 189 S.W.3d at 353; *Tovar v. State*, 165 S.W.3d 785, 795 (Tex.App.--San Antonio 2005, no pet.); *Dominguez v. State*, 62 S.W.3d 203, 208 (Tex.App.--El Paso 2000, pet. ref'd). Same transaction contextual evidence is evidence of another crime or act that is so intertwined with the charged offense that full proof of either crime could not be had without eliciting testimony of the other. *Delgado v. State*, 235 S.W.3d 244, 253 (Tex.Crim.App. 2007). The facts related to the criminal trespass offense are so intertwined with the facts related to the resisting arrest offense that the evidence related to each offense would have been admissible in a separate trial of each charge. *See King*, 189 S.W.3d at 354. Consequently, the error is consolidating the cases for trial over Appellant's objection is harmless. Issue Five is overruled. The judgment of the trial court is affirmed.

Appellant is hereby notified that he has a right to file a petition for discretionary review with the Court of Criminal Appeals. *See* TEX.R.APP.P. 68.1. The petition is due to be filed within thirty days after the day of our judgment in this case or the day the last timely motion for rehearing is overruled by this Court. *See* TEX.R.APP.P. 68.2.

May 29, 2013

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.
Antcliff, J., not participating

(Do Not Publish)