# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-24-00605-CR

**Alex Rodriguez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 21ST DISTRICT COURT OF BASTROP COUNTY
### NO. 14,840, THE HONORABLE CARSON TALMADGE CAMPBELL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Alex Rodriguez was sentenced to ten years' imprisonment for the felony offense of burglary of a habitation after his community supervision was revoked. *See* Tex. Penal Code §§ 12.33, 30.02; Tex. Code Crim. Proc. art. 42A.755. In two issues on appeal, he contends that he was not given fair notice concerning the revocation allegation and that the evidence was insufficient to support the revocation. We will affirm the trial court's judgment revoking his community supervision.

## BACKGROUND

Rodriguez was charged with burglary of a habitation. *See* Tex. Penal Code § 30.02. He entered into a plea-bargain agreement with the State in which he agreed to plead guilty to the charged offense in exchange for the State's recommending that his adjudication of guilt be deferred and that he be placed on deferred-adjudication community supervision for ten

years. Consistent with the agreement, the trial court deferred his adjudication of guilt and placed him on deferred-adjudication community supervision. *See* Tex. Code Crim. Proc. art. 42A.101. Approximately eight years later, the State filed a motion to adjudicate his guilt, alleging that he violated the terms of his community supervision by failing to abstain from the use of alcohol multiple times and by committing the offense of driving while intoxicated with two or more prior convictions for that offense. *See id.* arts. 42A.108, .751; Tex. Penal Code §§ 49.04., .09.

During a hearing on the motion to adjudicate, Rodriguez pleaded not true to the two allegations. After the hearing, the trial court found both allegations to be true, revoked his deferred-adjudication community supervision, adjudicated his guilt, and sentenced him to ten years' imprisonment; however, the trial court also agreed to suspend his sentence and place him on community supervision for ten years. The terms of Rodriguez's community supervision, signed by Rodriguez, required him to report to his community-supervision officer as directed by the officer and obtain the officer's permission before moving.

Rodriguez appealed the trial court's judgment adjudicating his guilt. The trial court later granted Rodriguez's motion for bond pending appeal. A few months later, this Court affirmed the trial court's judgment, and the appeal became final in September 2023. *See Rodriguez v. State*, No. 03-22-00490-CR, 2023 WL 3080001, at *2 (Tex. App.—Austin Apr. 26, 2023, pet. ref'd) (mem. op., not designated for publication).

After this Court issued its mandate in the prior appeal, the trial court issued an order for Rodriguez's arrest in September 2023 directing that he be detained until he was brought before the trial court so that it could determine whether to modify the terms of community supervision. On December 13, 2023, the trial court issued a jail-release order stating that Rodriguez was to be released and requiring that he appear before the court on specified

2

dates, including January 10, 2024. On January 17, 2024, the State moved to revoke Rodriguez's community supervision and asserted that he violated the terms of his community supervision by failing to report to his community-supervision officer on December 28, 2023. A hearing on the motion was held on September 11, 2024. The trial court took judicial notice of the file in this case at the beginning of the hearing. During the hearing, the community-supervision officer, Rodriguez, and his mother testified.[1]

In her testimony, the community-supervision officer explained that Rodriguez attended a community-supervision orientation when his guilt was adjudicated and when he was placed on community supervision and that all the terms of his community supervision were discussed at the orientation. Additionally, the officer recalled how Rodriguez was told that he did not have to comply with the terms of community supervision while his prior appeal was pending with this Court, but she explained that when Rodriguez's appeal became final, he was obligated to resume complying with the terms of his community supervision. Moreover, she testified that when he was informed that his appeal had become final after being detained and subsequently brought before the trial court in December 2023, the trial court informed him of the need to comply with the terms of his community supervision, including the need to report to his community-supervision officer. Rodriguez was released from custody but told the trial court that he was not going to comply with the terms of his community supervision.

The officer related that on the day after Rodriguez was released from custody in December 2023, she mailed him a letter informing him that he needed to report to her on

---

[1] Although the witnesses at the revocation hearing discussed events that occurred at prior hearings, the only reporter's record in the appellate record in this case is the one for the revocation hearing. *See Narvaez v. State*, No. 09-21-00331-CR, 2022 WL 16828750, at *3 n.2 (Tex. App.—Beaumont Nov. 9, 2022, no pet.) (mem. op., not designated for publication).

December 28, 2023, at 11:00 a.m. Additionally, she discussed how the letter was mailed to the address that he provided and how she did not receive anything from the postal service indicating that the letter had not been delivered. She also confirmed that a copy of the letter was included in the court's file. Further, she testified that a text reminder was sent to Rodriguez's phone two days before the scheduled report date and that she had confirmed that the text message had been sent. She related that defendants are required to update the community-supervision office if there are any changes to their addresses or phone numbers and that Rodriguez never advised her of any changes or told her that he lost access to his phone. According to the officer, Rodriguez failed to report to her on December 28 as directed.

When Rodriguez did not appear, the officer called him and left a voicemail, but he never called her back. She mailed him another letter on January 3, 2024, advising him that he had failed to report as directed and telling him to report to her on January 17, 2024, at 1:00 p.m. Further, she recalled that he had been ordered to report to the trial court on January 10 and that when he appeared for that setting, he told the court that "he wasn't going to report until he was assigned a new" community-supervision officer because "he had trouble with" her. The officer related that he was "taken into custody at that time."

In his testimony, Rodriguez explained that his community-supervision officer and his prior appellate attorney informed him that his community-supervision obligations were suspended while the appeal was pending. Further, he testified that after receiving a letter from this Court explaining that his conviction had been affirmed, he received a letter from the trial court ordering him to appear. When he appeared before the trial court following his appeal becoming final, he informed the trial court that he did not "want to do a[nother] ten-year probation sentence." Further, Rodriguez stated that he discussed his options for being released

4

with one of his prior attorneys, that the attorney said that he had made arrangements for Rodriguez to appear before the trial court on certain dates, and that his attorney related that the duty to appear would be the only condition of his release. Rodriguez explained that based on the information he had received from his community-supervision officer and his prior attorney, he believed that the court appearances were "an alternative" to reporting to his community-supervision officer and that he believed reporting on those dates was all that he was required to do when he was released from jail. However, he recalled that when he did report to the trial court as scheduled, he was arrested anyway.

At the revocation hearing, Rodriguez stated that he believed that the device used to monitor his alcohol intake when he was originally placed on deferred-adjudication community supervision must have malfunctioned previously because it reported that he had consumed alcohol even though he had not. Based on his experience with the monitor, he related that he did not think he would be able to finish ten years of community supervision if a similar error were to occur. He also testified that he had a problem with his assigned community-supervision officer and had asked to be assigned to a different one. During his cross-examination, Rodriguez admitted that he provided the community-supervision officer with his address, and he stated that he could not recall if he ever told the officer that he no longer had a telephone.

Next, Rodriguez's mother testified that Rodriguez provided financial support for her and other family members. Further, she expressed that he had been in jail for long enough and that she did not believe he would commit any new crimes if he were released.

After considering the testimony presented at the hearing and listening to the parties' arguments, the trial court found the failure-to-report revocation allegation true, revoked

Rodriguez's community supervision, and sentenced him to ten years' imprisonment. *See* Tex. Penal Code § 12.33.

Rodriguez appeals the trial court's judgment revoking community supervision.

**DISCUSSION**

In his first issue on appeal, Rodriguez asserts that the trial court improperly violated his due process rights by revoking his community supervision without his having been provided with fair notice of the revocation allegation. In his second issue, he argues that the evidence was insufficient to support his revocation.

**Fair Notice**

When arguing that he was not provided fair notice and that his due process rights were violated, Rodriguez presents several sets of arguments. First, he contends that the motion to revoke filed by the State did not contain a certificate of service and that he did not receive a copy of the motion. In fact, he claims that he did not receive notice of the revocation allegation until the day of the revocation hearing when the trial court read the motion to revoke. Further, he argues that it was unclear what his reporting obligations had been.[2] More specifically, he argues that the trial court included in the jail-release order the dates for which he was ordered to appear and highlights that those dates did not include the December 28 date for which he allegedly did not report to his community-supervision officer.

---

[2] When arguing that the reporting obligations were not clear, Rodriguez references portions of the community-supervision officer's testimony and the trial court's jail-release order. However, because we ultimately conclude that Rodriguez did not preserve his first issue for appeal and because he references those portions of the record in his second issue as they bear on the sufficiency of the evidence supporting revocation, we will address the arguments pertaining to that evidence in his second issue.

6

However, Rodriguez did not make any of these claims before the trial court or file a motion for new trial asserting them. In fact, at the start of the revocation hearing, the trial court asked Rodriguez's attorney to show Rodriguez the court's copy of the motion to revoke after stating that the court believed that Rodriguez had already "been given a copy of it," and Rodriguez did not contradict that recollection of events. Moreover, when the trial court read the motion, Rodriguez made no complaint that he had not received notice of the allegation. Further, Rodriguez's attorney explained that he had been on the case for months, that he had "plenty of time to negotiate with the State," and that there had been several settings in the case already. At the end of the hearing, the trial court asked the parties if there was anything else they needed to discuss on the record, and both sides answered in the negative. *Cf. Eddie v. State*, 100 S.W.3d 437, 440 (Tex. App.—Texarkana 2003, pet. ref'd) (finding assertion that defendant was not aware of terms of community supervision to be "without merit" based on defendant's "response when the allegations . . . were read to him").

Generally, before a party may present "a complaint for appellate review, the record must show that . . . the complaint was made to the trial court by a timely request, objection, or motion" "with sufficient specificity to make the trial court aware of the complaint." *See* Tex. R. App. P. 33.1(a). Preservation of error is a "systemic requirement" on appeal. *See Darcy v. State*, 488 S.W.3d 325, 327 (Tex. Crim. App. 2016). An issue raised on appeal generally must be preserved by a specific objection at trial. *Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009). Accordingly, to preserve a complaint on appeal, the party must make a specific objection letting the trial court "know what he wants, why he thinks himself entitled to it, and do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Id.* at 312-13 (quoting *Lankston v. State*,

7

827 S.W.2d 907, 909 (Tex. Crim. App. 1992)); *see Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009).

"[C]omplaints concerning procedural due process are not preserved for appeal if the appellant did not make a due process objection at the time of revocation." *Gipson v. State*, 395 S.W.3d 910, 916 (Tex. App.—Beaumont 2013), *rev'd on other grounds*, 428 S.W.3d 107, 109 (Tex. Crim. App. 2014); *see also Rogers v. State*, 640 S.W.2d 248, 263-64 (Tex. Crim. App. 1982) (second op. on reh'g) (noting need to make "some type of due process objection" to complain on appeal about procedure used by trial judge). The preservation rule "ensures that trial courts are provided an opportunity to correct their own mistakes at the most convenient and appropriate time—when the mistakes are alleged to have been made." *Hull v. State*, 67 S.W.3d 215, 217 (Tex. Crim. App. 2002). Even "constitutional rights, including those that implicate a defendant's due process rights, may be forfeited for purposes of appellate review unless properly preserved." *Anderson v. State*, 301 S.W.3d 276, 280 (Tex. Crim. App. 2009). The need to inform the court of the basis for an objection is greater for constitutional complaints than for nonconstitutional ones "because constitutional error is subject to a much stricter harm analysis on appeal." *Clark v. State*, 365 S.W.3d 333, 339-40 (Tex. Crim. App. 2012).[3]

Accordingly, we must conclude that Rodriguez failed to preserve his arguments for appellate consideration. *See Eddie*, 100 S.W.3d at 440-41 (determining that defendant did not preserve due-process complaint regarding absence of proof that he received copy of

---

[3] In his briefing on this issue, Rodriguez relies on *Kuenstler v. State*, 486 S.W.2d 367 (Tex. Crim. App. 1972). Although the Court of Criminal Appeals did conclude that the defendant in that case was denied due process, the defendant objected at the hearing to the lack of notice, and the Court distinguished the circumstances present in that case from those in which an issue concerning the revocation motion was presented for the first time on appeal. *See id.* at 369-70.

conditions of community supervision or copy of motion to revoke community supervision listing conditions that he allegedly violated because he did not alert "the trial court by complaining at any point in the proceedings"); *see also Sneed v. State*, 493 S.W.3d 218, 221 (Tex. App.—Fort Worth 2016, no pet.) (concluding that defendant failed to preserve complaint "that her due process and due course of law rights were violated" because defendant made no objection at revocation hearing or in motion for new trial); *Jones v. State*, 112 S.W.3d 266, 270 (Tex. App.—Corpus Christi-Edinburg 2003, no pet.) (determining that defendant did not preserve due-process complaint during revocation hearing).[4]

For these reasons, we overrule Rodriguez's first issue on appeal.

**Sufficiency of the Evidence**

In his second issue, Rodriguez argues that the evidence was insufficient to establish that he failed to report to his community-supervision officer. As support for that proposition, Rodriguez notes that the trial court's jail-release order from December 2023 set out

---

[4] At the end of the briefing on this issue and in his second issue, Rodriguez suggests that the trial court could not have revoked his community supervision because the motion to revoke "was not filed and served" until the day of the revocation hearing and contends this was improper because the hearing did not occur "until after the original probationary term ended on February 6, 2023." *See Nesbit v. State*, 227 S.W.3d 64, 69 (Tex. Crim. App. 2007) (determining that trial court did not have jurisdiction to revoke community supervision when motion to revoke was filed after "his term of community supervision expired"). Although Rodriguez is correct that his original deferred-adjudication community supervision would have expired in 2023 had he not later been adjudicated guilty of the offense, the trial court did adjudicate his guilt in 2022 and at that point placed him on community supervision for ten years. Accordingly, even if the motion to revoke were deemed to have been filed at the time of the hearing in December 2024, the motion and the revocation hearing happened within the community-supervision period, and the trial court had jurisdiction to revoke his community supervision. *See* Tex. Code Crim. Proc. art. 42A.751(a), (*l*) (noting that trial court may issue warrant for violation of condition of community supervision "[a]t any time during the period of community supervision" and that trial court retains jurisdiction to hold hearing and revoke community supervision even if period of community supervision expired provided that State filed motion to revoke and capias was issued before expiration of supervision period).

dates that he was obligated to appear, that the order did not include December 28, and that he did report as directed by the order by showing up to the trial court on January 10. Further, he asserts that there was no other order requiring him to report to his community-supervision officer on any particular date. Moreover, he highlights his testimony from the revocation hearing in which he explained that he was told not to comply with the community-supervision requirements while his prior appeal was pending and that he believed that reporting to the trial court as directed by the jail-release order was an alternative to having to report to his community-supervision officer. Additionally, although he acknowledges that the community-supervision officer testified that she sent him a letter telling him to report on December 28, the letter was not made part of the record in this case.[5]

Further, Rodriguez argues that the officer's testimony concerning the obligation to report was confusing. More specifically, he suggests that the community-supervision officer provided conflicting testimony regarding the report date, changing it from December 8 to December 28 and later to January 17. In a related argument, he contends that the evidence could not support revocation in this case because the officer's testimony concerning the report date was inconsistent with the days on which he was ordered to appear in the jail-release order. For

---

[5] We note that Rodriguez did not argue below and does not argue on appeal that the affirmative defense found in article 42A.756 of the Code of Criminal Procedure applied. *See* Tex. Code Crim. Proc. art. 42A.756 (stating that in failure-to-report case, there is affirmative defense to revocation that community-supervision officer failed to "contact[] or attempt[] to contact the defendant in person at the defendant's last known address or last known employment address"); *see also* Tex. Penal Code § 2.04(d) (providing that defendant has burden to prove affirmative defense by preponderance of evidence); *Suell v. State*, No. 12-07-00193-CR, 2008 WL 836557, at *1 (Tex. App.—Tyler Mar. 31, 2008, no pet.) (mem. op., not designated for publication) (explaining that defendant cannot "complain for the first time on appeal that the State failed to negate the affirmative defense"); *Washington v. State*, No. 14-00-00032-CR, 2001 WL 333074, at *2 (Tex. App.—Houston [14th Dist.] Apr. 5, 2001, pet. ref'd) (op., not designated for publication) (noting that issue concerning affirmative defense argued for first time on appeal was not preserved because it did not comport with arguments made at trial).

10

these reasons, he urges that the evidence was insufficient to find that he violated the reporting obligation and that this Court should reverse the trial court's judgment revoking his community supervision.

A trial court's decision to revoke community supervision is reviewed under an abuse-of-discretion standard. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006). Under that standard, a trial court's ruling will be deemed an abuse of discretion only if it is so clearly wrong as to lie outside "the zone of reasonable disagreement," *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is "arbitrary or unreasonable," *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005).

"An order revoking community supervision must be supported by a preponderance of the evidence." *Maxey v. State*, 49 S.W.3d 582, 584 (Tex. App.—Waco 2001, pet. ref'd). In this context, "a preponderance of the evidence" means "that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his probation." *Rickels*, 202 S.W.3d at 763-64 (quoting *Scamardo v. State*, 517 S.W.2d 293, 298 (Tex. Crim. App. 1974)). When making its determination, a trial court may make reasonable inferences from the evidence, *see id.* at 764, and "is the sole judge of the credibility of the witnesses and the weight to be given to their testimony," *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013). In addition, appellate courts review the evidence presented during the hearing in the light most favorable to the trial court's ruling. *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981).

As an initial matter, we do not agree with Rodriguez's characterization of the record pertaining to the community-supervision officer. Although the officer did, seemingly mistakenly, initially state in her testimony that she scheduled a report date for December 8,

she later clarified and stated more than once that the scheduled date was December 28. The officer also testified that she sent another letter advising him of the need to report on January 17, 2024, but the officer explained that she did so only after he failed to report as required on December 28.

In any event, even if there were inconsistencies, for challenges to the evidence supporting a revocation, appellate courts view the evidence in the light most favorable to the trial court's ruling. *Id.* Assuming that there were inconsistencies, we would presume that the trial court resolved those inconsistencies in favor of revocation. *See Martinez v. State*, 563 S.W.3d 503, 510-11 (Tex. App.—Corpus Christi-Edinburg 2018, no pet.) (explaining in revocation context that appellate courts "presume that the factfinder resolved any . . . conflict in favor" of its ruling).

When the trial court adjudicated Rodriguez's guilt and placed him on community supervision in 2022, the trial court issued the terms of his community supervision, including the obligation to report to his community-supervision officer as directed by her and to inform her of any changes to his address. The document setting out the terms includes a statement that Rodriguez "hereby acknowledge[s] receipt of the terms of and conditions of probation" and reflects that Rodriguez, a community-supervision officer, and the trial judge all signed the document. *Cf. Lockett v. State*, No. 08-03-00204-CR, 2004 WL 1368227, at *2 (Tex. App.—El Paso June 17, 2004, no pet.) (mem. op., not designated for publication) (noting when affirming revocation on basis of failure to report that defendant "signed an acknowledgment that he had been informed of all the terms and conditions"). Further, the community-supervision officer testified that Rodriguez attended a community-supervision orientation after being adjudicated guilty and that all of the community-supervision obligations were discussed with him

at the orientation. Although Rodriguez correctly points out that the trial court included in its jail-release order specific dates for him to appear, the language of the order specifies that the dates listed were days that Rodriguez was ordered to appear before the trial court, not days he was required to report to his community-supervision officer as required by the terms of his community supervision.

Even though the community-supervision officer explained that Rodriguez was told that he did not have to comply with his community-supervision requirements while his prior appeal was pending, she also testified that he was obligated to resume complying with those requirements once that appeal became final.[6] Further, she stated that he was informed by the trial court of the need to comply once his appeal became final, that the terms of his community supervision were explained again, and that the trial court specifically told him that he needed to report to his community-supervision officer.

Additionally, the officer related that she sent Rodriguez a letter to the address he provided on the day after he was released from custody informing him that he was required to report to her on December 28, 2023, at 11:00 a.m., and she recalled that she did not receive any notification from the postal service indicating that he did not receive the letter or any notification

_____

[6] Although it does not bear on the outcome of this appeal, we note that there is difference in a defendant's obligation to comply with the terms of his community supervision when a defendant appeals the conviction resulting in the imposition of community supervision as opposed to when a defendant appeals an order revoking community supervision. *Compare In re Leonard*, 402 S.W.3d 421, 422 (Tex. App.—Fort Worth 2013, no pet.) ("[T]he filing of a motion to revoke does not toll the period of community supervision, even when there is an appeal from the revocation of community supervision."), *and Maldonado v. State*, 115 S.W.3d 212, 214 (Tex. App.—Corpus Christi-Edinburg 2003, pet. ref'd) ("When an appeal is taken from an order revoking community supervision, the probationary period continues to run unabated until it expires or until a revocation order is entered and becomes final."), *with McConnell v. State*, 34 S.W.3d 27, 30 (Tex. App.—Tyler 2000, no pet.) ("When a valid appeal is taken from a criminal conviction assessing a probated sentence, the terms of community supervision do not commence until the mandate from the appellate court effecting final disposition of the appeal is issued.").

from him saying that his address had changed. *Cf. Milligan v. State*, No. 14-98-00837-CR, 2000 WL 890665, at *2 (Tex. App.—Houston [14th Dist.] July 6, 2000, no pet.) (op., not designated for publication) (concluding that trial court did not abuse its discretion by determining that defendant failed to report for administrative hearing where evidence showed that State sent notice of hearing to defendant's address, where letter was not returned, and where none of letters sent to defendant's home were returned). In his testimony, Rodriguez agreed that he provided his address to the community-supervision officer, explained that he received letters from the trial court and this Court, and did not assert that he did not receive the letter from the officer informing him of his need to report. *See Hardman v. State*, 614 S.W.2d 123, 127, 128 (Tex. Crim. App. 1981) (determining that evidence was sufficient to support revocation for failure to report where community-supervision officer testified that he sent letter to defendant instructing him to report to community-supervision department, where there was no evidence that defendant did not receive letter, and where there was evidence that defendant was orally instructed about need to report).

The community-supervision officer also related that she sent the phone number that Rodriguez had provided a text message reminder a few days before the report date, that she had confirmed that the message had been sent, and that he had not advised her of any changes to his phone number. Rodriguez testified that he could not recall whether he ever informed the officer that he no longer had an active phone and did not claim in his testimony that he did not have an active phone or phone number at the time the officer said she texted him. *Cf. Lavigne v. State*, No. 03-19-00111-CR, 2020 WL 962406, at *4 (Tex. App.—Austin Feb. 28, 2020, no pet.) (mem. op., not designated for publication) ("Although Lavigne points to the testimony demonstrating that the certified letter was not claimed, other evidence was presented during that

14

hearing upon which the district court could have reasonably inferred that Lavigne was aware of the hearing and chose not to attend."). Further, the officer testified that he did not appear as directed on December 28.

Although Rodriguez testified that he believed he did not need to report to his community-supervision officer based on representations made to him that his obligations had previously been suspended and based on his prior attorney's claim that appearing before the trial court was an alternative to reporting to his community-supervision officer, Rodriguez's testimony was inconsistent with that of the officer. *See Hacker*, 389 S.W.3d at 865 (noting that trial court is sole judge of witness's credibility and weight to give their testimony); *see also Perales v. State*, 622 S.W.3d 575, 582 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd) (explaining that factfinder "was free to disregard appellant's self-serving testimony"). When resolving these inconsistencies, the trial court was aided by additional testimony from the officer and Rodriguez indicating that he informed the trial court on prior occasions that he did not want to comply and would not comply with the terms of his community supervision.

Viewing the evidence in the light most favorable to the trial court's ruling and considering the reasonable inferences that the trial court was free to make from that evidence, we conclude that the trial court did not abuse its discretion by finding that the State proved by a preponderance of the evidence that Rodriguez violated the terms of his community supervision by failing to appear as directed by his community-supervision officer. *See Lavigne*, 2020 WL 962406, at *4-5 (overruling claim that evidence was insufficient to support ground that defendant failed to report partly because evidence showed that letter was sent to home where defendant had been living, that letter was sent to address on file with community-supervision department, and that defendant never informed department that she had moved, which was required under terms

15

of her community supervision); *see also Jones v. State*, 472 S.W.3d 322, 324 (Tex. App.—Eastland 2015, pet. ref'd) (mem. op.) (explaining that violation of single condition of community supervision is sufficient to support revocation determination).[7]

For these reasons, we overrule Rodriguez's second issue on appeal.

### CONCLUSION

Having overruled both of Rodriguez's issues on appeal, we affirm the trial court's judgment revoking his community supervision.

_____

Karin Crump, Justice

Before Justices Triana, Theofanis, and Crump

Affirmed

Filed:   February 11, 2026

Do Not Publish

---

[7] When presenting his argument concerning fair notice and his due process rights in the first issue, Rodriguez relies on a case addressing the sufficiency of the evidence supporting a revocation ruling. *See Cotton v. State*, 472 S.W.2d 526 (Tex. Crim. App. 1971). Although the Court of Criminal Appeals did conclude in that case that the trial court abused its discretion by revoking community supervision, it did so after explaining that there was "no evidence in the record as to when appellant was to report." *Id.* at 527. Unlike the circumstances in *Cotton*, there is evidence in this record establishing when Rodriguez was obligated to report. Accordingly, the analysis from *Cotton* does not support the contentions Rodriguez asserts in either issue.